**Robinson Antonio MARTI–XIQUES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 82–6141**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 9, 1983.

---

Stephen H. Broudy, North Miami Beach, Fla., for petitioner.

Lauri Steven Filippu, U.S. Dept. of Justice, James A. Hunolt, I.N.S., Washington, D.C., Elena R. Stinson, San Juan, P.R., for respondent.

Before GODBOLD, Chief Judge, FAY and CLARK, Circuit Judges.

GODBOLD, Chief Judge:

The issue in this appeal is whether appellant Marti-Xiques is eligible for relief from deportation under Sec. 244(a)(1) or 212(c) of the Immigration and Nationality Act ("Act"). 8 U.S.C. Secs. 1254(a)(1), 1182(c) (1976 & Supp. V 1981). We hold that while appellant is ineligible for relief under Sec. 244(a)(1), he is eligible for discretionary relief under Sec. 212(c). We remand to the Board of Immigration Appeals for it to determine whether it will reopen appellant's case.

Appellant, a thirty-year-old native and citizen of Columbia, became a lawful permanent resident of this country December 23, 1975. He has resided here since then and now lives in Puerto Rico with his wife and child. His difficulties with immigration authorities began in August 1979, when he sailed a vessel to the Bahamas and took 12 Colombia citizens aboard with the intent to smuggle them into this country. He was arrested in Florida waters with the aliens aboard.

Criminal charges were lodged against Marti-Xiques, and he was convicted in federal district court of knowingly aiding another alien to enter this country illegally in violation of 8 U.S.C. Sec. 1324(a)(1). Deportation proceedings were also initiated against him. The INS issued a show cause order and subsequently filed an additional charge, charging appellant with deportability for entering this country without inspection and for knowingly aiding another alien to enter.

The immigration court found Marti-Xiques deportable as charged on both grounds. It denied his motion for discretionary relief and ordered that he depart this country voluntarily or face deportation. The Board of Immigration Appeals affirmed.

On appeal appellant does not challenge the findings of deportability. Rather, he argues that he is eligible for discretionary relief from deportation under Secs. 244(a)(1) and 212(c) of the Act, 8 U.S.C. Secs. 1254(a)(1), 1182(c) (1976 & Supp. V 1981).

### I. 244(a)(1)

Section 244(a)(1) gives the attorney general discretion to suspend deportation of an alien who inter alia has been physically present in this country for a continuous period of more than seven years preceding the date of his application for relief. Appellant concedes that he was not eligible for relief under this section when the immigration court and the Board rendered their decisions because he had not then been continuously present here more than seven years. He argues, however, that the seven-year eligibility period accrued December 23, 1982, while this appeal was pending. Citing *Vargas-Gonzalez v. INS,* 647 F.2d 457 (5th Cir.1981) (Unit A), another case where the seven-year period accrued during the pendency of appeal, he asks that the case be remanded to the Board for reconsideration

in light of his alleged newly acquired eligibility.[1]

INS contends that appellant is still ineligible for Sec. 244(a)(1) relief because he has not been "continuously" present in this country since 1975. According to INS, appellant's trip to the Bahamas for the purpose of illegally smuggling aliens into this country interrupted his presence within the meaning of Sec. 1254(a)(1).

The Supreme Court's decision in *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), provides the starting point in analyzing whether Marti-Xiques's illegal excursion was "meaningfully interruptive" of his presence here. Construing another provision of the Act, the Court in *Fleuti* identified three factors useful in determining whether an alien's departure was "intended": duration of the absence, purpose of the trip, and whether the alien had to obtain travel documents. *Id.* at 462, 83 S.Ct. at 1812.

■ This court has recently applied the *Fleuti* factors in determining whether a temporary stay in another country interrupts an alien's presence in this country for purposes of Sec. 244(a)(1). *See Fidalgo/Velez v. INS*, 697 F.2d 1026 (11th Cir.1983).[2] There the appellant traveled to the U.S. Consulate in Canada to obtain a visa as an immediate relative of her husband. Although her husband died the day before her trip, she did not inform the Consulate of his death. Based on the deceitful purpose of appellant's trip, this court held that her one day's absence meaningfully interrupted her presence in this country. The court reasoned: "Any flexibility incorporated into Section 244(a)(1) to protect a resident alien from 'unsuspected risks and unintended consequences' ... only extends to 'wholly innocent action.'" 697 F.2d at 1030 (quoting *Fleuti*, 374 U.S. at 462, 83 S.Ct. at 1812). The court's reliance on the illegal purpose of her trip can be traced to *Fleuti* itself, where the Court stated: "[I]f the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful." 374 U.S. at 462, 83 S.Ct. at 1812. In light of *Fidalgo/Velez* and *Fleuti* we hold that appellant's trip to the Bahamas meaningfully interrupted his presence in this country. The purpose of the trip, smuggling aliens into this country, was not "wholly innocent" and was clearly contrary to immigration policy.[3] Because appellant has not been continuously present in this country for more than seven years, he is ineligible for a Sec. 244(a)(1) discretionary suspension.

## II. 212(c)

Section 212(c) of the Act permits discretionary relief from deportation as to enu-

1. That the seven-year period had not expired when appellant filed his application for discretionary relief does not forever foreclose relief. The administrative regulations permit the appellant to move to reopen or reconsider based on new evidence. 8 C.F.R. Secs. 3.2, 3.8 (1983).

2. *See also Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir.1979).

3. Although purporting to adhere to *Fleuti*, the Ninth Circuit has held that in determining whether an alien's absence interrupted the required continuity "[t]he Board must determine whether a particular absence during the seven-year period reduced the significance of the whole period as reflective of the hardship and unexpectedness of explusion." *Kamheangpatiyooth v. INS*, 597 F.2d 1253, 1256 (9th Cir. 1979). We rejected this test in *Fidalgo/Velez.* The Supreme Court has granted certiorari to decide the validity of the Ninth Circuit's test.

*See Phinpathya v. INS*, 673 F.2d 1013 (9th Cir.1981), *cert. granted*, —— U.S. ——, 103 S.Ct. 291, 74 L.Ed.2d 275 (1982).

Although Marti-Xiques urges us to adopt the Ninth Circuit's test, that test is of no help to him. Consistent with the Court in *Fleuti*, the Ninth Circuit has recognized that a trip undertaken with an illegal purpose may be meaningfully interruptive wholly apart from "its relevance in determining whether an absence has significantly affected the reasonableness of an inference that expulsion would be harsh and unexpected." *Kamheangpatiyooth*, 597 F.2d at 1257 n. 5.

Because our conclusion that Marti-Xiques's trip was meaningfully interruptive is proper even under the Ninth Circuit's test, we need not await the Supreme Court's decision in *Phinpathya* to decide this case.

merated grounds of deportation.[4] One of the section's eligibility requirements is that the alien possess an unrelinquished domicile of seven years. Appellant's argument for relief under this section essentially tracks his Sec. 244(a)(1) argument. While he concedes that when the immigration court and the Board rendered their decisions he had not possessed a lawful domicile in this country for the necessary seven-year period, he argues that the seven-year period has accrued during the pendency of this appeal. He asks that we remand the case to the Board for a determination of whether it will grant him discretionary relief under Sec. 212(c).

The government argues that we need not decide whether Marti-Xiques qualifies for discretionary relief under Sec. 212(c), because even if he is eligible for such relief he remains deportable on other grounds. The basis of this assertion requires some explanation.

By its terms, Sec. 212(c) applies only in exclusion proceedings where a resident alien has traveled abroad temporarily and where he is excludable under one of several enumerated grounds. Despite the literal language of the section, the Board interprets it to apply in deportation proceedings. The Board initially limited Sec. 212(c)'s application in deportation proceedings to cases where a resident alien had traveled abroad temporarily. In *Francis v. INS,* 532 F.2d 268, 272–73 (2d Cir.1976), however, the Second Circuit held that the distinction between potential deportees who have traveled abroad temporarily and those who have not is irrational. The court held that equal protection requires that Sec. 212(c) relief be available in deportation proceedings even where the alien has never left this country.

INS does not challenge *Francis*'s holding. Rather, INS argues that while Sec. 212(c) is available in deportation proceedings generally the section encompasses only those grounds of deportation that are also grounds of excludability enumerated in (c). The Board has adopted this interpretation,

holding that although *Francis* expanded the class of aliens to which Sec. 1182 applied, it "did not increase the statutory grounds to which [Sec. 1182(c)] relief may be applied." *In re Granados,* 16 I. & N.Dec. 726, 728 (1979).

INS points out that while one of the two grounds of deportability (smuggling aliens) is both a ground of deportation and an enumerated ground of exclusion, the other (entering without inspection) is a ground of deportation only. *Compare* 8 U.S.C. Sec. 1251(a)(2), (13) *with* 8 U.S.C. Sec. 1182(a)(31). Accordingly, INS contends that this latter ground of exclusion may not be waived and appellant's deportation must be affirmed.

■ INS's interpretation of the statute clashes with Sec. 212(c)'s purpose. Grounds for exclusion are more numerous and in general much stricter than the grounds for deportation. *See* Comment, *Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act,* 47 U.Chi.L.Rev. 771, 772–74 & nn. 9 & 10 (1980). Section 212(c) serves to relieve aliens of the potential hardships flowing from literal application of exclusion provisions that permit an alien to be excluded for reasons less substantial than those necessary to support deportation. While the purpose of the section is to allow forgiveness of offenses that are in many cases not serious enough to constitute grounds for deportation, INS construes the statute to permit forgiveness for the more serious offense, smuggling aliens, but to preclude forgiveness for the less serious offense, entering without inspection. Congress unquestionably viewed entering without inspection as less serious than the smuggling offense. The Immigration and Nationality Act provides that a person smuggling aliens is guilty of a felony punishable by a fine of up to $2000 and imprisonment for a term of up to five years, or both, for each alien smuggled. 8 U.S.C. Sec. 1324 (1976). In striking contrast, an alien who evades an inspection place in entering this country is guilty of a misdemeanor, punish-

---

**4.** While Sec. 212(c), by its literal terms, applies only in exclusion proceedings to enumerated grounds of exclusion, INS has interpreted it to apply in deportation proceedings. *See infra.*

able by imprisonment of not more than six months and a fine of up to $500. 8 U.S.C. Sec. 1325 (1976).

INS offers no explanation of why Congress wished to treat entering without inspection more leniently than smuggling aliens for purposes of the Act's criminal provisions but more harshly with respect to the Sec. 212(c) forgiveness provision. Indeed, in its brief, it characterizes this result as an "anomaly." Brief of Appellee at 14 n. 8. The anomaly of treating appellant's two grounds of deportability differently is compounded in this case by the fact that the two grounds arose out of the same incident. On these facts we hold that Sec. 212(c) permits discretionary relief as to both of appellant's grounds for exclusion.

■ Our holding is necessarily limited. We do not hold that Sec. 212(c) permits discretionary relief as to all grounds of deportability. Nor do we hold that an appellant may claim the benefit of Sec. 212(c) as to a given ground of deportation merely by pointing to a more serious ground of exclusion with which he is not charged but that is enumerated in Sec. 212(c). All we hold is that where an appellant is deportable under two grounds arising out of the same incident, Sec. 212(c) permits waiver of an unenumerated ground if a more serious ground is an enumerated ground for waiver.[5]

■ INS also contends that appellant remains ineligible for Sec. 1182(c) relief. While INS agrees with him that he first acquired a lawful domicile December 23, 1975, it maintains that lawful domicile ceased to exist approximately one month short of the required seven years, November 5, 1982, when the Board rendered its decision.

The Second Circuit's decision in *Lok v. INS,* 681 F.2d 107 (2d Cir.1982), supports INS's position. In *Lok,* as here, the Board issued its decision upholding a finding of deportability before the seven-year period of domicile had accrued. As in this case, the appellant in *Lok* did not challenge the finding of deportability on appeal but rather argued that he was eligible for Sec. 212(c) relief because the seven-year period accrued during the pendency of his appeal. The court, however, held that Lok's lawful domicile ended when the Board's decision became final because he did not challenge the Board's findings of deportability. *Id.* at 110. The court reasoned that an appellant who has conceded deportability cannot possess a lawful intent to remain in this country. The court stated:

> The possibility of such discretionary relief led the INS and the Courts to tolerate Lok's presence; it did not legalize his intent to remain any more than the Service's policy against deporting Lok as the spouse of a citizen.... Once Tim Lok's order for deportation was not timely challenged on the merits, he resided in the United States once again as a matter of grace, not law.

*Id.* at 110 (footnote omitted). Although *Lok* implies that appellant's lawful domicile ended when the Board's decision became final and before the required seven-year period had elapsed, we decline to follow *Lok* for two reasons.

First, *Lok* rests on the premise that an alien who has been granted Sec. 212(c) relief cannot possess a lawful intent to remain in this country. That an alien remains here by virtue of legally conferred

---

5. Our holding is somewhat at odds with the literal language of Sec. 212(c), which permits waiver as to enumerated grounds of exclusion. Section 212(c) makes no mention of waiver with respect to grounds of deportation. It also does not mention deportation proceedings. Despite this latter omission, INS interprets Sec. 212(c) to apply in deportation proceedings. *Cf.* Comment, *supra,* at 774–75 n. 19 (arguing that Sec. 212(c) should not apply in deportation proceedings). It strikes us as inconsistent for INS, on the one hand, to attribute no signifi-

cance to Sec. 212(c)'s failure to mention deportation proceedings but, on the other hand, to argue that Sec. 212(c)'s silence regarding grounds of deportation evinces an intent to preclude relief with respect to grounds of deportation that are not one of the enumerated grounds of exclusion. INS cannot have it both ways. If Sec. 212(c)'s failure to mention deportation proceedings generally has no significance, then its omission of any reference to grounds of deportation likewise has no significance.

discretion rather than automatic legal right does not render his intent to remain unlawful. The law permits many actions as a matter of grace and not of right; an intent to engage in such actions is not unlawful. So long as the Board, in its discretion, permits an alien to remain in this country, his presence and his intent to remain are lawful. It follows that until denial of discretionary relief is upheld appellant's intent to remain in this country cannot be deemed unlawful.[6]

Second, the *Lok* rule will engender undesirable consequences. The rule can be easily circumvented if the appellant appeals the Board's finding of deportability. *Lok* thus encourages appellants always to contest deportability even when frivolous. Further, because the *Lok* bar is easily evaded with a pro forma objection to the finding of deportability, it will ensnare only the unwary.

▮ Having concluded that appellant is now eligible for discretionary relief under Sec. 212(c), we now consider appellant's request that the case be remanded to the Board. Marti-Xiques relies heavily on *Vargas-Gonzalez v. INS*, 647 F.2d 457 (5th Cir. 1981) (Unit A), a Sec. 244(a)(1) case where, as here, the seven-year period required for eligibility accrued during the pendency of appeal. In that case the former Fifth Circuit noted that the appellant was entitled to file a motion to reopen the case with the Board because of his newly acquired eligibility for discretionary relief. *Id.* at 458. The court further noted that there was a substantial likelihood that the requested relief would be granted, stating that appellant had "made a substantial showing that the Board should properly afford him relief on the basis of the additional evidence available subsequent to the initial hearing." *Id.* at 459. The court held that the appellant had made out a prima facie case that discretionary relief was warranted and that he was entitled to have his case reopened, and remanded the case to the Board for further proceedings. *Id.*

Appellant is not entitled to have his case reopened simply because he can demonstrate statutory eligibility. The Board also requires a showing of a reasonable likelihood that the relief sought would be granted as a matter of discretion. *In re Rodriguez-Vera*, 17 I. & N.Dec. 105, 106–07 (1979). In deciding whether to grant discretionary relief, the "immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country." *In re Marin*, 16 I. & N.Dec. 581, 584 (1978).

Unlike the appellant in *Vargas-Gonzalez*, the appellant here has not made a substantial showing that relief is appropriate. At the same time, however, we cannot say on the basis of the record before us that discretionary relief is inappropriate. Among the factors that argue in favor of relief in this case are appellant's family ties to this country and his history of employment. *Vargas-Gonzalez*, 647 F.2d at 459. His criminal conviction, however, is an adverse factor. Ordinarily an applicant with a criminal record will be required to show rehabilitation before discretionary relief will be granted. *Marin*, 16 I. & N.Dec. at 585. The record before us shows that appellant was paroled from his sentence for smuggling aliens.

---

**6.** Another theory arguably negates the lawfulness of appellant's intent to remain in this country once the Board's decision became final. Under *Lok,* an appellant's failure to challenge the Board's finding of deportability undermines the legitimacy of his intent to remain. The crucial factor, however, is arguably the appellant's concession that when the Board's decision was rendered he was ineligible for discretionary relief and hence that the Board properly denied such relief. Combined with a failure to challenge deportability, this concession implies that deportation was proper at the time the Board's decision became final. If deportation was proper, the appellant's intent to remain was arguably illegitimate.

While it possesses logical symmetry, this theory is too formalistic. We are unwilling to endorse the anomalous consequence flowing from such a formalism. *See infra.* For instance, an appellant could always legitimize his intent to remain with a pro forma challenge to deportability.

The decision to grant Sec. 212(c) relief is a matter of discretion exercised by the immigration court. Whether appellant can make out a prima facie case of entitlement for discretionary relief is also within the discretion of administrative tribunals that Congress created to decide immigration cases in the first instance. In some cases, as in *Vargas-Gonzalez*, the appellant has clearly established a prima facie case and we may remand. In others, the appellant will just as clearly have failed to establish a prima facie case, and we may affirm. Other cases, such as the one at bar, fall between these two extremes. In deference to the Board's discretion and in light of the equivocal record before us, we remand for the Board to determine whether it will reopen appellant's case.

REMANDED.