George Simeon CABASUG, also known as Simeon Salum Cabasug, Jr., Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 86–7451.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1987.

Decided Jan. 26, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc May 27, 1988.

Marc Van Der Hout and Adria–Ann McMurray, Redwood City, Cal., for petitioner.

David J. Kline and Linda S. Wendtland, Dept. of Justice, Washington, D.C., for respondent.

Before WALLACE and POOLE, Circuit Judges, and KLEINFELD,* District Judge.

KLEINFELD, District Judge:

Petitioner seeks review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from an immigration judge's deportation order and denial of discretionary relief under § 212(c) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1182(c) (1982). The main issue in the case, below and here, was applicability of § 1182(c), set forth below. We have jurisdiction pursuant to 8 U.S.C. § 1105a (1982). We determine that the immigration judge's order was valid and dismiss the petition.

Mr. Cabasug, a citizen of the Philippines, was admitted to the United States as a permanent resident in 1968. In 1983, he was convicted in the California Superior Court of carrying a sawed-off shotgun, while on probation for assault with a dead-

* Honorable Andrew J. Kleinfeld, United States District Judge, District of Alaska, sitting by des-

ly weapon. He was later judged deportable, under § 241(a)(14) of the Act, 8 U.S.C. § 1251(a)(14) (1982), which provides for deportation of persons convicted of carrying a sawed-off shotgun or machine gun. Mr. Cabasug's brothers and sisters, parents, wife and children all reside in the United States. The immigration judge denied discretionary relief under § 1182(c) and ordered him deported. The BIA held that discretionary relief under § 1182(c) is not available to a person deported under § 1251(a)(14).

■ The issue in this petition for review is whether § 1182(c), which provides for discretionary relief from exclusion, applies to deportation under § 1251(a)(14). This issue appears to be one of first impression in this circuit. The Fifth Circuit summarily rejected petitioner's position in *Zinnanti v. INS*, 651 F.2d 420, 422 (5th Cir. Unit A 1981) (per curiam).

Persons who are not citizens of the United States may be excluded on a number of grounds when they attempt to enter the United States. The Attorney General has discretion to waive grounds for exclusion in certain circumstances. Aliens who are already in the United States may be deported on numerous grounds. A much more restrictive discretionary relief statute applies to deportations. In some circumstances, deportations have been treated by the Immigration and Naturalization Service as though they were exclusions, and the discretionary relief available for exclusions has been applied. Petitioner would have this court deem the statute unconstitutional unless it is construed to mean that the discretionary relief for exclusion applies to the ground at issue for deportation.

Section 1251(a)(14) provides:

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

ignation.

. . . .

(14) at any time after entry, shall have been convicted of possessing or carrying in violation of any law any weapon which shoots or is designed to shoot automatically or semi-automatically more than one shot without manual reloading, by a single function of the trigger, or a weapon commonly called a sawed-off shotgun.

The Department of Labor, then in charge of immigration law enforcement, characterized the proposal for enactment of this provision as authority to "get after some of these racketeers who are not otherwise deportable." *Crime to Prevent Overthrow of Government: Hearing Before a Subcommittee of the Committee on the Judiciary, United States Senate, on H.R. 5138,* 76th Cong., 3d Sess. 35 (1940). The language was apparently taken from the National Firearms Act. *Id.* at 26. The prohibited kinds of weapons have been characterized in a decision regarding the Firearms Act as "weapons used principally by persons engaged in unlawful activities." *Haynes v. United States,* 390 U.S. 85, 87, 88 S.Ct. 722, 725, 19 L.Ed.2d 923 (1968). Congress originally considered discretionary relief under the deportation statute, and decided, when it added the firearms ground, not to permit discretionary relief from deportation on that ground and certain others applying to "aliens ... likely to be undesirable residents." H.R.Conf.Rep. No. 2683, 76th Cong., 3d Sess. 9 (1940). In the 1952 Act, however, Congress decided to grant limited discretionary relief to aliens convicted of firearms offenses, which it later expanded by amendment. 8 U.S.C. § 1254(a)(2).

A separate exclusion statute, 8 U.S.C. § 1182, provides for exclusion of certain aliens seeking entry into the United States. The exclusion statute states:

Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States.

8 U.S.C. § 1182(a) (1982). The statute describes 32 excludable classes. Aliens convicted of weapons offenses are not among these excludable classes.

Examination of the language of the exclusion and deportation statutes discloses an elaborate and complex scheme. Any alien excludable at the time of entry is deportable under 8 U.S.C. § 1251(a)(1) (1982). Many grounds for exclusion are involuntary, however, and are not grounds for deportation if they come into existence after lawful admission into the United States. For example, an alien "shall be excluded" if "afflicted with any dangerous contagious disease" under 8 U.S.C. § 1182(a)(6) (1982), but is not deportable if the disease was contracted after admission into the United States. An alien is excludable for existing insanity under 8 U.S.C. § 1182(a)(2), (3) (1982); but if not then barred by insanity, the analogous deportation statute requires that he be institutionalized at public expense within five years after entry "because of mental disease, defect, or deficiency, unless the alien can show that such disease, defect or deficiency did not exist prior to his admission." 8 U.S.C. § 1251(a)(3) (1982).

Numerous other differences exist between exclusion and deportation. Aliens who are "paupers, professional beggars, or vagrants" are excludable under 8 U.S.C. § 1182(a)(8) (1982); but if not then so classified, they are not deportable for these reasons unless, within five years after entry, in the Attorney General's opinion they have "become a public charge from causes not affirmatively shown to have arisen after entry." 8 U.S.C. § 1251(a)(8) (1982). Polygamy is a ground for exclusion under 8 U.S.C. § 1182(a)(11) (1982), but polygamy after entry is not listed as a separate ground for deportation.

Some grounds for exclusion cannot logically apply to deportation, such as attempted entry of a stowaway, and reapplication for admission without the Attorney General's consent within one year of deportation. 8 U.S.C. § 1182(a)(16), (18) (1982). Likewise, some grounds for deportation cannot logically apply to exclusion, such as failure of a registered resident alien to keep the

Attorney General notified of his address. 8 U.S.C. § 1251(a)(5) (1982).

Other provisions are similar but not identical. For example, conviction of a "crime involving moral turpitude" before admission is a ground for exclusion, with exceptions for "purely political" and certain juvenile offenses. 8 U.S.C. § 1182(a)(9) (1982). The analogous deportation ground does not include the "purely political offense" exception, and adds an exception for crimes where the sentence was for less than one year of confinement. 8 U.S.C. § 1251(a)(4) (1982).

Certain narcotics and marijuana offenses are grounds both for exclusion and deportation. 8 U.S.C.A. § 1182(a)(23), § 1251(a)(11) (West Supp.1987). These drug subsections are among the most nearly identical sections of the exclusion and deportation statutes.

Section 1182(c), providing for discretionary relief in the exclusion statute, is the basis of Mr. Cabasug's appeal. He claims a right under this provision to be considered for discretionary relief from deportation. The statutes, however, do not make discretionary relief equally available in deportation and exclusion cases. The discretionary relief subsection for exclusion cases provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section. Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.

8 U.S.C. § 1182(c) (1982).

On its face, the statute has no application in the case before us. Mr. Cabasug faces deportation, not exclusion. Mr. Cabasug has not "temporarily proceeded abroad voluntarily," as required by the statute. Nor is Mr. Cabasug applying to be "admitted,"

as the statute requires. He has made no "entry" to which the exclusion could apply.

We have no reason to doubt that Congress intended exactly what it accomplished when it put this discretionary provision only in the exclusion and not the deportation statute. Congress wrote a separate statute for discretionary relief from deportation, 8 U.S.C. § 1254(a). This statute is explicitly made applicable to persons deportable under the sawed-off shotgun and machine gun subsection. 8 U.S.C. § 1254(a)(2) (1982). Mr. Cabasug did not apply for relief under this section. We cannot see why Congress would have written § 1254(a) if it intended § 1182(c) to apply to deportation as well as exclusion.

One ground for deportation is failure to keep the Attorney General advised of changes of address. 8 U.S.C. § 1251(a)(5) (1982). Congress provided explicitly for more liberal discretionary relief from that ground if an alien:

> establishes to the satisfaction of the Attorney General that such failure was reasonably excusable or was not willful.

*Id.* This provision manifests the detailed attention Congress gave to discretionary relief.

Congress also left the Attorney General discretion whether to seek deportation by the language "shall, upon the order of the Attorney General, be deported." 8 U.S.C. § 1251(a) (1982). This language implies that the Attorney General retains discretion at the stage of deciding to initiate a deportation proceeding. *Johns v. Department of Justice*, 653 F.2d 884, 890 (5th Cir.1981).

Petitioner's theory is that a body of case law which developed under another subsection of the exclusion statute should be extended to the sawed-off shotgun and machine gun subsection of the deportation statute. Under the narcotics and marijuana subsection, some circuits, including ours, have applied the discretion provision of the exclusion statute to the deportation statute. The subsections relating to narcotics and marijuana are similar in the exclusion and deportation statutes. 8 U.S.

C.A. §§ 1182(a)(23), 1251(a)(11) (West Supp. 1987). Courts have reasoned that it was arbitrary to distinguish between an alien who had never left the United States and thus could be treated only under the deportation statute, and one who took a temporary trip abroad, and thereby fell under the exclusion statute. We distinguish these cases, because Congress provided different treatment between sawed-off shotgun and machine gun offense, and narcotics offenses.

The line of authorities at issue begins with *Arias–Uribe v. Immigration and Naturalization Service,* 466 F.2d 1198 (9th Cir.1972). That petitioner sought discretionary relief under 8 U.S.C. § 1182(c) at a deportation hearing arising out of a state court conviction for possession of heroin. This circuit held that "[t]he Attorney General is not given discretion by the immigration laws to waive or suspend deportation for narcotics offenders." *Id.* at 1199.

The literal approach of this circuit in *Arias–Uribe* was rejected by the Second Circuit in *Francis v. Immigration and Naturalization Service,* 532 F.2d 268 (2d Cir.1976). *Francis* held that the petitioner was entitled to apply for discretionary relief in a deportation proceeding based on a state court conviction for possession of marijuana, a misdemeanor. The administrative practice of the INS was to apply the discretionary relief statute to aliens convicted of marijuana possession who had departed from and re-entered the United States, but not to aliens who had never made such a departure, regardless of whether the issue arose at the time of readmission. The INS treated its subsequent exercise of discretion as merely a *nunc pro tunc* correction of the record of reentry. The Second Circuit held that "the Board's interpretation of Section 212(c) is unconstitutional as applied to this petitioner." *Id.* at 273. The court's rationale was that the interpretation denied due process under the Fifth Amendment, incorporating the equal protection requirement of the Fourteenth Amendment, because as applied the statute drew an arbitrary distinction:

> Reason and fairness would suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time. *Id.*

In *Tapia–Acuna v. Immigration and Naturalization Service,* 640 F.2d 223 (9th Cir.1981), this circuit decided to follow *Francis,* because the decision in *Arias–Uribe* led to different treatment of similarly situated persons in the Ninth and other circuits. *Tapia–Acuna* was a deportation case arising out of a state court conviction for possession of marijuana. We agreed with *Francis* that "§ 1182(c), as interpreted in *Arias–Uribe* and its progeny, creates a distinction that lacks a rational basis." *Id.* at 225 (footnote omitted). Specifically referring to subsection 11, the provision relating to narcotic drugs and marijuana, we said:

> Consequently, we hold that eligibility for § 1182(c) relief cannot constitutionally be denied to an otherwise eligible alien who is deportable under § 1251(a)(11), whether or not the alien has departed from and returned to the United States after the conviction giving rise to deportability.

*Id.* The language in the statute providing for exclusion of aliens convicted of marijuana possession was substantially identical to the statutory language providing for deportation. In contrast, the deportation ground involved here, possession of a sawed-off shotgun or machine gun, has no counterpart in the exclusion statute.

■ This court considered an analogous problem of the availability of discretionary relief for a deportation ground not identical to an exclusion ground in *Gutierrez v. Immigration and Naturalization Service,* 745 F.2d 548 (9th Cir.1984). The immigration judge had found two grounds for deportation, entry without inspection, a deportation ground not listed as a ground for exclusion, and conspiracy to distribute cocaine, a ground under both statutes. Petitioner's application for discretionary relief had been denied because the first ground, entry without inspection, was a basis for deportation for which no discretionary re-

lief was available. This court noted that the ground for decision selected by the Board of Immigration Appeals "entails a difficult constitutional issue" which "[w]e need not decide," and remanded for decision on the non-constitutional ground, whether the immigration judge correctly decided that the petitioner was not a suitable candidate for discretionary relief based on his criminal record. *Id.* at 550. In *Tapia–Acuna,* we explicitly noted that "[w]e do not decide" whether denial of § 1182(c) discretionary relief to an alien subject to deportation for entry without inspection, renders § 1182(c) unconstitutional as applied to aliens deportable under § 1251(a)(2). *Tapia–Acuna,* 640 F.2d at 225 n. 5 (discussing *Sotelo Mondragon v. Ilchert,* 653 F.2d 1254 (9th Cir.1980)).

We now must squarely face the issue left undecided in *Gutierrez* and *Tapia–Acuna.* We decide in accord with deference to the legislature. We see no due process violation in the policy choice made by Congress.

*Francis* and *Tapia–Acuna* are distinguishable. Both involved a ground substantially identical in the exclusion and deportation statutes. The administrative process for applying the statute to the grounds had resulted in deportation being treated like exclusion, if the alien had at any time taken a trip outside the country. The Second Circuit saw no distinction justifying different treatment between an alien possessor of illegal drugs who had traveled outside the country at some time in the past, and one who had not. This circuit first affirmed the deportation order in *Tapia–Acuna,* 620 F.2d 311 (9th Cir.1980), then followed *Francis* after a remand by the United States Supreme Court "for further consideration in light of the position presently asserted by the Solicitor General in his brief filed October 3, 1980." 449 U.S. 945, 101 S.Ct. 344, 66 L.Ed.2d 209 (1980).

By contrast with narcotics and marijuana cases, there exists no class of persons alike in carrying sawed-off shotguns or machine guns, and deportable or not depending on the irrelevant circumstance of whether at some previous time they took a temporary trip out of the country. The gravamen of the equal protection violation identified in *Francis* was just such a distinction without a material difference. In the treatment of these weapons offenses, Congress has legislated no such distinction, nor has any administrative practice created one.

Appellant would have us hold that the INS, rather than Congress, has created an arbitrary distinction by its refusal to extend § 1182(c) discretion to all grounds for deportation except those explicitly excluded in § 1182(c). This is merely a rhetorical device to avoid an explicit challenge to the statute. Congress, as explained above, clearly expressed its intention that § 1182(c) relief applies only to § 1182, the exclusion statute. The *Francis* and *Tapia–Acuna* decisions held that this distinction, in combination with the administrative practice of applying the exclusion statute *nunc pro tunc* to aliens who had previously traveled outside the country, violated the Constitution insofar as it required different treatment for drug offenses covered under both the exclusion and deportation statutes. We are not about to overturn an Act of Congress under the pretense that we are merely correcting an administrative aberration.

Petitioner next argues that Congress could not have meant to treat the firearms offense more seriously than crimes of moral turpitude such as murder or rape, yet crimes of moral turpitude are grounds for exclusion for which § 1182(c) discretion is available. Petitioner cites an Eleventh Circuit decision, *Marti–Xiques v. Immigration and Naturalization Service,* 713 F.2d 1511 (11th Cir.1983), *vacated* 724 F.2d 1463 (11th Cir.1984), *decided on other grounds,* 741 F.2d 350 (11th Cir.1984).

In *Marti-Xiques,* an alien was charged with deportability on two grounds arising out of one incident, entry without inspection and smuggling in other aliens. The court held that since § 1182(c) discretionary relief was available for the smuggling charge, the same relief must be available for the less serious charge of entry without inspection, even though entry without inspection was not listed in § 1182(c) as a

ground for which discretionary relief was available. 713 F.2d at 1515–16. The court carefully limited its holding to deportability on two grounds arising out of the same incident. It refused to hold "that an appellant may claim the benefit of [§ 1182(c) ] as to a given ground of deportation merely by pointing to a more serious ground of exclusion with which he is not charged but that is enumerated in [§ 1182(c) ]." *Id.* at 1516. Thus, even if *Marti–Xiques* were still good authority, it would not go far enough to support petitioner.

We do not agree that all crimes of moral turpitude are necessarily more serious than possession of a sawed-off shotgun or machine gun. We also do not agree with the implicit proposition that the Constitution requires Congress to lay out crimes on a spectrum, and grant at least as much discretion for the less serious as for any more serious crimes.

Congress has given special treatment to firearms offenses in various contexts. For example, 18 U.S.C.A. § 924(c) (West Supp. 1987) provides for a mandatory prison term, consecutive to that for the underlying crime, without possibility of probation, suspension, or parole, for carrying a firearm during the commission of various crimes. If the firearm is a machine gun or equipped with a silencer, the mandatory sentence is doubled. There is no anomaly in Congress depriving the INS of discretion in somewhat analogous circumstances to those in which it has deprived the judiciary of discretion in the criminal context. Congress may fashion a sanction without discretionary mitigating features in order to deter a kind of conduct about which it is especially concerned. Congress may reasonably determine that a nondiscretionary moderate penalty will deter violators more effectively and more justly than a lesser risk of a harsher penalty.

The legislative history described above suggests that Congress gave special attention to deporting "racketeers," and saw machine guns and sawed-off shotguns as badges of such individuals. The singling out of the machine gun and sawed-off shotgun offenses in the deportation statute is a reasonable means by which to achieve the legitimate purpose of deporting "racketeers." Congress may have decided to withhold discretion such as applies in exclusion cases because it found a public policy advantage in deporting the entire class of aliens convicted of the sawed-off shotgun and machine gun offenses which it did not perceive for some members of the classes of aliens committing certain other offenses. Congress has "almost plenary" power in this area, and "the decisions of Congress are subject only to limited judicial review." *Adams v. Howerton,* 673 F.2d 1036, 1041 (9th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982). The treatment for deportation purposes of these firearms offenses is a rational means to achieve the legitimate purpose of deterring possession of the forbidden weapons by aliens.

The petition for review is dismissed.

WALLACE, Circuit Judge, concurring:

I concur with the majority, although my analysis is somewhat different. In *Tapia–Acuna v. INS,* 640 F.2d 223 (9th Cir.1981) (*Tapia* ) we held that when the basis upon which the INS seeks deportation is identical to a statutory ground for exclusion for which discretionary relief would be available, the equal protection component of the fifth amendment due process clause requires that discretionary relief be accorded in the deportation context as well. *Id.* at 224–25; *accord Francis v. INS,* 532 F.2d 268 (2d Cir.1976) (*Francis* ); *see also Gutierrez v. INS,* 745 F.2d 548, 550 (9th Cir. 1984) (dicta). We reached this result because persons situated in a like manner must receive like treatment. We did not think it rational to distinguish between aliens who had committed the same crime on the basis of whether they traveled abroad recently, and reach a different result depending on whether they were in a deportation or exclusion proceeding. *Tapia,* 640 F.2d at 225; *see also Francis,* 532 F.2d at 273.

In this case, however, the holdings of *Francis* and *Tapia* are not applicable. The Board of Immigration Appeals (BIA) held

that no discretionary relief from deportation would be available to Cabasug for a crime for which no discretionary relief from exclusion is available because the crime is not an excludable offense. Cabasug is simply not being treated unlike any alien who is eligible for discretionary relief from exclusion.

Cabasug nonetheless argues that he has been denied equal treatment because he is being treated unlike those aliens deportable under section 1251 who nevertheless are able to obtain discretionary relief under section 1182(a) because the ground for their deportation is also a ground for exclusion. It is undeniable that Cabasug is being treated differently from this class of deportable aliens. The determinative issue, however, is whether the distinction has no rational basis—as was found to be the case with a brief border crossing in *Francis* and *Tapia*—or whether there is indeed a rational basis for the difference in treatment. *See Tapia,* 640 F.2d at 225.

It seems clear that there is a rational basis for the distinction. Cabasug has committed a crime distinct and different from any of those crimes or actions that are grounds for exclusion. It is beyond dispute that Congress rationally may treat different crimes differently. One way it has done so in the immigration context has been to deny discretionary relief to certain categories of offenders. Section 1251(f)(1)(A) denies to those aliens who were Nazis or Nazi collaborators and were involved in racial, religious, ethnic, or political persecution the discretionary relief from deportation otherwise available to certain aliens excludable at entry. The very statute that is the focus of this appeal, section 1182(c), denies discretionary relief from exclusion to aliens who do not possess passports permitting them to enter another country within six months of their admission; who a consular officer or the Attorney General believes would engage in activities inimical to the public interest after entry; who adhere to certain enumerated political ideas; or who a consular officer or the Attorney General believes would engage in espionage or sedition following entry. 8 U.S.C. §§ 1182(a)(26–29), 1182(c). Obviously, Congress may constitutionally

deny discretionary relief from exclusion or deportation to some classes of aliens, like participants in genocide or practitioners of espionage, because Congress could rationally decide that discretionary relief would be undesirable for these particular classes. The equal protection component of the due process clause does not require that all deportable aliens be treated alike, no matter what they have done. Thus, I reject Cabasug's argument that equal protection mandates that discretionary relief be available to him merely because it is available to aliens who are deportable on different grounds.

Cabasug, however, also claims that denying him discretionary relief has no rational basis because it is available to aliens convicted of "more serious crime[s]" but not to those aliens convicted of Cabasug's "less serious" crime. This argument ignores Congress's express purpose in passing the provision that rendered deportable persons convicted of possessing a machine gun or sawed-off shotgun. This provision was originally enacted as part of the Alien Registration Act of 1940, Title II § 20(b)(3), 54 Stat. 670, 672, and was carried over into the Immigration and Nationality Act of 1952. *See* H.Rep. No. 1365, 82nd Cong., 2d Sess. (1952), *reprinted in* 1952 U.S. Code Cong. & Ad.News 1653, 1715. It was originally enacted to enable the government to deport "gunmen and racketeers" who often were "not otherwise deportable," *Crime to Promote Overthrow of Government: Hearing Before a Subcommittee of the Committee on the Judiciary, United States Senate on H.R. 5138,* 76th Cong., 3d Sess. 34–35 (1940). The "not otherwise deportable" language appears to refer to the government's inability to procure convictions and sentences against them for crimes of "moral turpitude" that would already have permitted their deportation under existing law. *See* Immigration Act of 1917 § 19, 39 Stat. 874, 889. In essence, Congress was using possession of a machine gun or sawed-off shotgun as a method to identify a person involved in more serious organized criminal activity—a method that seems entirely reasonable in light of the uses to which such weapons are normally put and the nearly total lack of an

innocent purpose for carrying one. Despite Cabasug's contention, the crimes committed by the class of persons who carry such weapons are not, as a rule, less serious than those crimes involving "moral turpitude" which do not act as a bar to discretionary relief. Moreover, as the Congressional Hearings reveal, those who carry machine guns or sawed-off shotguns often commit other crimes for which it is difficult for the government to obtain convictions. It thus is not irrational to distinguish this class of crimes from others which do not act as a bar to discretionary relief. Although there will obviously be some cases in which a person convicted of carrying a machine gun or sawed-off shotgun will, in fact, not have committed a more serious crime, the requirement of a rational relationship does not mean that the categories chosen will describe perfectly every case. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). Cabasug's second equal protection argument therefore must also fail.

I concur in affirming the decision of the BIA.