**Neal Andrew CARR, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 94–70373.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1996.

Decided June 25, 1996.

Jan Joseph Bejar, San Diego, California, for the petitioner.

Bryan S. Beier and Charles E. Pazar, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

---

* Honorable William D. Browning, United States District Judge, District of Arizona, sitting by des-

Before: WALLACE and T.G. NELSON, Circuit Judges, and BROWNING,* District Judge.

WALLACE, Circuit Judge:

Carr petitions us to review the decision of the Board of Immigration Appeals (Board), holding him deportable under section 241(a)(2)(C) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1251(a)(2)(C). We have jurisdiction over this timely petition pursuant to 8 U.S.C. § 1105a(a). We deny the petition.

I

Carr is a native of Canada who entered the United States at Blaine, Washington, on March 12, 1967. At that time, he was two years old, and he entered as a legal permanent resident.

On November 7, 1991, Carr was convicted of assault with a deadly weapon in violation of California Penal Code § 245(a)(2) (prohibiting "[a]ny person [from] commit[ting] an assault upon the person of another with a firearm"). The Act subjects aliens convicted of firearms offenses to deportation. *See* 8 U.S.C. § 1251(a)(2)(C). On March 8, 1993, the Immigration and Naturalization Service (Service) issued Carr an order to show cause charging his deportability.

Carr challenged his deportation by moving the immigration judge (IJ) to terminate deportation proceedings so that he could receive an expungement of his conviction under California Penal Code § 1203.4. An expungement, Carr argued, would make his conviction nonrecognizable for deportation purposes. *See generally Matter of Ozkok*, 19 I. & N.Dec. 546 (BIA 1988) (a conviction for a crime of moral turpitude, if expunged, may not support deportation). The IJ and subsequently the Board denied this motion, ruling that the Service only recognizes expungements for certain specific classes of crimes. Carr's firearms offense did not fall within any of these classes, and, therefore, there would be no purpose in delaying deportation

ignation.

to allow Carr to seek expungement. In his petition to us, Carr argues that the Service's policy of recognizing expungement for some crimes, but not the weapons offense for which he was convicted, violates his right to equal protection under the Constitution's Due Process Clause. Although Carr did not raise this constitutional objection in his administrative hearings, we conclude we should hear it. *Garberding v. INS*, 30 F.3d 1187, 1188 n. 1 (9th Cir.1994) (*Garberding*) (issues not raised with the Board are usually waived, but an equal protection issue may be brought for the first time before us if it does not involve procedural errors).

## II

▇▇ We review the Board's determination of questions of law de novo, but give deference to the Board's interpretation of the Act. *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir.1995). Whether a deportation proceeding violated an alien's due process rights is reviewed de novo. *Burgos–Abril v. INS*, 58 F.3d 475, 476 (9th Cir.1995).

Aliens against whom courts have rendered a "final conviction" are generally deportable. *See Gutierrez v. INS*, 323 F.2d 593, 596–97 (9th Cir.1963), *cert. denied*, 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179 (1964); *see generally* 8 U.S.C. § 1251. However, the Service has made certain, limited exceptions to this rule. First, it will recognize the expungement, pursuant to a state statute, of crimes of moral turpitude. Thus, aliens convicted of such crimes, which otherwise would provide grounds for deportation, may avoid deportation if they receive an expungement. *See, e.g., Matter of Ibarra–Obando*, 12 I. & N. 576 (BIA 1966, AG 1967).

Second, the Service also recognizes the expungement of certain drug offenses. *See Garberding*, 30 F.3d at 1189–90. While it had been a long standing Service policy to deny recognition of expungement of drug crimes, *see Matter of A—F—*, 8 I. & N. Dec. 429, 432 (AG 1959), the Federal First Offender Act (recodified at 18 U.S.C. § 3607) altered this policy. This statute expunges the convictions of certain classes of federal drug offenders. *See* 18 U.S.C. § 3607(c) (a first time drug offender who is under 21 years of age shall receive an expungement of his crime which shall "restore such person, in the contemplation of the law, to the status he occupied before such arrest or institution of criminal proceedings"). As a result of this statute, the Attorney General will not deport an alien if the alien's federal conviction has been expunged under section 3607. *See, e.g., Matter of Seda*, 17 I. & N. Dec. 550, 553 (BIA 1980). In addition, if a state enacts a statutory counterpart to section 3607, the Service will recognize the state expungement of state drug offenses. *See In re Deris*, Int. Dec. 3102 at 12 (BIA 1989) (*Deris*) (denying relief from deportation because the Maryland drug offense expungement statute did not "qualify as a state counterpart to the federal first offender statute"), *modified by, In re Manrique*, Int. Dec. 3250 (BIA 1995) (*Manrique*).

▇▇ Carr's weapons offense does not fall within these limited exceptions. It is not a crime of moral turpitude. *See Komarenko v. INS*, 35 F.3d 432, 435 (9th Cir.1994) (precluding an alien convicted of violating California Penal Code § 245(a)(2)—the same statute pursuant to which Carr was convicted—from seeking a discretionary deportation waiver available to those convicted of crimes of moral turpitude); *Gonzalez–Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir.1994) ("[t]ypically, crimes of moral turpitude involve fraud" as well as "acts of baseness or depravity contrary to accepted moral standards" (quotations omitted)). Nor is Carr's crime an expungeable drug offense. The Board properly refused to delay deportation until Carr could receive an expungement because the Service would not recognize the expungement for deportation purposes.

▇▇ Against this obvious application of the Act and its explanatory precedent, Carr makes an equal protection claim. He argues that the Service's distinction between expungeable and nonexpungeable crimes has no rational basis and thus violates his due process right of equal protection. *See Garberding*, 30 F.3d at 1190 ("[C]itizens and aliens alike [ ] are protected by the Due Process Clause of the Constitution. It is equally well established that the Due Process

Clause incorporates the guarantees of equal protection." (citations omitted)). We test Carr's assertion recognizing that federal classifications of aliens "are valid unless wholly irrational." *Id.* (quotations omitted).

First, Carr points to *Garberding* as support for his claim, but this case gives him no help. It dealt with a problem resulting from the Service's practice of recognizing expungement of state convictions only if the state statute which expunged the alien's conviction substantially resembled section 3607. *Id.* at 1188–91; *see also Deris,* Int. Dec. 3102. Deportation, therefore, depended upon which state's laws the alien happened to violate. We struck down this Service practice on equal protection grounds. *Garberding,* 30 F.3d at 1191 ("distinguishing *Garberding* for deportation because of the breadth of Montana's expungement statute, not because of what she did, has no logical relation to the fair administration of the immigration laws").

Following *Garberding,* the Service abandoned the approach, exemplified in *Deris,* of recognizing state expungements only when the state expungement statute is a "counterpart" to the federal first offender statute. Instead, under current practice, the Service will not deport an alien convicted under state law if the alien can "establish[ ] that he would have been eligible for federal first offender treatment." *Manrique,* Int. Dec. 3250 at 11. The Service declared that *Deris* and similar cases are thereby "modified" to reflect this new understanding of the law. *Id.*

Carr asserts that *Garberding* somehow requires us to hold that the Service's distinction between firearms on the one hand, and moral turpitude and drug crimes on the other, is irrational and violative of due process. *Garberding,* however, ruled only on the constitutionality of treating aliens differently on the basis of which state laws they violated. It concluded only that treating aliens differently on the basis of their state expungement statute is irrational; it did not speak to the issue of treating aliens differently on the basis of the crimes they had committed. Because the holding of *Garberding* is so limited, it cannot serve Carr's purpose of showing that the Service's distinctions based on the crimes aliens commit violate due process.

As a second argument, Carr asserts that it is irrational to allow expungement for crimes of moral turpitude, but not for weapons offenses, where many crimes of moral turpitude would seem greatly more egregious than firearms offenses. *Cabasug v. INS,* 847 F.2d 1321 (9th Cir.1988) (*Cabasug* ), prevents our adoption of this argument. .

*Cabasug* dealt with a slightly different issue: whether the Service can rationally deny discretionary deportation or exclusion relief under section 212(c) of the Act, 8 U.S.C. § 1182(c), to aliens convicted of firearms offenses, but not to aliens convicted of more serious crimes. The principle adopted in *Cabasug* is clear: the Service can craft different policies for firearms offenses even though some would view them as out of line with its policy towards other crimes. *See Cabasug,* 847 F.2d at 1327 ("We do not agree that all crimes of moral turpitude are necessarily more serious than possession of a sawed-off shotgun or machine gun. We also do not agree with the implicit proposition that the Constitution requires Congress to lay out crimes on a spectrum . . . ."). Therefore, considering that *Cabasug* allowed the Service to treat firearms violations differently in the context of eligibility for discretionary deportation or exclusion relief under section 212(c) of the Act, the Service may do so in the context of expungement recognition as well.

PETITION DENIED.