UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CARLOS RENE UMANZOR-LAZO,
Petitioner-Appellant,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent-Appellee.

No. 98-1898

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-98-1749-CCB)

Argued: December 1, 1998

Decided: May 5, 1999

Before WILLIAMS and MICHAEL, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Dismissed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Lee P. Gelernt, Senior Staff Attorney, AMERICAN
CIVIL LIBERTIES UNION, New York, New York; Jamie Win-
theysen Aparisi, Washington, D.C., for Appellant. Ethan B. Kanter,
Office of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON**

**BRIEF:** Frank W. Hunger, Assistant Attorney General, William J. Howard, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Petitioner-Appellant Umanzor-Lazo ("Umanzor") appeals from the district court's order transferring his petition for writ of habeas corpus due to lack of jurisdiction in the district court to review a final order of deportation. Appellant also moved to file an amended verified petition for writ of habeas corpus in this court. For the reasons discussed below, we dismiss this appeal for lack of standing and deny the motion to amend. We therefore need not reach the other issues raised by appellant, namely, (1) jurisdiction of the district court to hear petitions for writ of habeas corpus brought by aliens, and (2) retroactivity of the 1996 amendments to the Immigration and Nationality Act.

I.

Umanzor is a native of El-Salvador who arrived in the United States in 1976 and became a lawful permanent resident in 1981. Umanzor has been convicted twice under Maryland law: first in 1992 for assault with intent to maim and then in 1993 for robbery with a deadly weapon.[1] In 1995, while Umanzor was still incarcerated,

_____

[1] The first conviction for assault resulted from Umanzor's firing a gun through the door of a house where a party was being held, wounding someone standing behind the door. The second conviction, for robbery with a deadly weapon, involved the robbery of a gas station, allegedly using a BB gun that was later discovered behind the gas station.

2

deportation proceedings were initiated against him. Umanzor was released from the custody of the State of Maryland in 1996 and taken into INS custody in 1998.

For purposes of his 1996 deportation hearing, Umanzor was charged with deportability for committing two crimes of moral turpitude punishable by a term of imprisonment of one year under section 241(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2)(A)(ii) (Supp. II 1996). He conceded deportability based on the two Maryland convictions, but applied for a discretionary waiver of deportation under section 212(c) of INA, 8 U.S.C. § 1182(c) (Supp. II 1996).[2] Before the hearing on the application for section 212(c) relief, the INS filed an additional charge of deportability on the ground that the 1992 conviction for assault was a conviction for use of a firearm, a ground for deportation under section 241(a)(2)(C) of INA, 8 U.S.C. § 1251(a)(2)(C). The Immigration Judge ("IJ"), in her January 2, 1997 decision to pretermit the 212(c) waiver application and deport Umanzor to El Salvador, found that the 1993 conviction constituted a firearm offense rendering him ineligible for section 212(c) relief.

In February 1998, the Board of Immigration Appeals ("BIA") dismissed Umanzor's appeal. The BIA did not reach the merits of Umanzor's claims because by the time the BIA considered the case, Congress had enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") and the Attorney General had ruled in Matter of Soriano, Int. Dec. 3289 (A.G. Feb. 21, 1997), that AEDPA section 440(d)[3] applied retroactively, requiring dismissal of all pending applications for section 212(c) relief.

_____

[2] Section 212(c) grants the IJ discretion to waive deportation after consideration of factors such as long-term residence in the U.S., location of immediate family in the U.S., etc.

[3] One of the effects of AEDPA§ 440(d) on the immigration laws was to expand the category of crimes which render a deportable alien ineligible for § 212(c) relief to include commission of two or more crimes of moral turpitude, a charge that Umanzor conceded.

3

In June 1998, Umanzor filed his petition for writ of habeas corpus and injunctive relief in the United States District Court for the District of Maryland. The district court dismissed the matter for lack of jurisdiction, relying on 8 U.S.C. § 1252(g), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA"). The district court transferred the action to the court of appeals pursuant to 28 U.S.C. § 1631, reasoning that under INA as amended by IIRIRA, claims arising out of final orders of deportation can only be heard by the courts of appeals.

Umanzor also petitioned the BIA to reopen deportation proceedings so that he could contest deportability, as suggested in the BIA's dismissal of his appeal. On June 4, 1998, before the district court had ruled on Umanzor's habeas petition, the BIA denied his motion to reopen, finding that Umanzor "did not plead in reliance upon the availability of a Section 212(c) waiver," because "he was deportable for a non-waivable firearms offense," and finding that Umanzor was ineligible for a waiver under either 212(c) or 212(h).

II.

This court has adhered to the Supreme Court's exposition of the doctrine of standing, as stated in Article III of the Constitution of the United States. Three elements must exist in order for any plaintiff, including this appellant, to have standing: he "must have suffered an actual or threatened injury in fact; the injury must have been caused by the defendant's complained-of-conduct; and the injury must be redressable by the relief sought." Friends of the Earth, Inc. v. Laidlaw Environmental Serv., Inc., 149 F.3d 303, 306 (4th Cir. 1998). All three elements must continue to exist at "every stage of review, not merely at the time of the filing" of the petition. See id. Here, as in Laidlaw, we focus on the continued existence of the third element, redressability.

Appellant fails to bring a redressable claim either before the district court or on appeal because even if his arguments about the retroactivity of AEDPA and jurisdiction of the district courts to hear habeas petitions after IIRIRA have merit, there is no possibility of relief if his case were remanded to the BIA. Appellant conceded before the IJ

4

that he had been convicted of two previous crimes. At least one of these crimes constitutes a firearms offense. Therefore, even under the law in effect prior to enactment of AEDPA, Umanzor was ineligible for a waiver under section 212(c) of the INA because he had been convicted of a firearms offense. See, e.g., Campos v. INS, 961 F.2d 309 (1st Cir. 1992); Cato v. INS, 84 F.2d 597, 599 (2d Cir. 1996); Rodriguez v. INS, 9 F.3d 408 (5th Cir. 1993); Gjonaj v. INS, 47 F.3d 824 (6th Cir. 1995); Cabasug v. INS, 847 F.2d 1321 (9th Cir. 1988); Rodriguez-Padron v. INS, 13 F.3d 1455 (11th Cir. 1994).

Remand to the BIA for a technical determination of whether or not either of the prior convictions was for a firearms crime would be futile. The BIA has already determined in its decision on appellant's motion to reopen that Umanzor was deportable for a non-waivable firearms offense, and therefore had not conceded deportability before the IJ in reliance on the availability prior to AEDPA of a § 212(c) waiver. This decision makes clear that even if we were to remand his case to the BIA, Umanzor's argument--that the weapon involved in the armed robbery for which he was convicted was not a firearm because it was a BB gun--would be of no assistance to him. The first conviction, for assault with intent to main, certainly involved a firearm, even according to Umanzor's version of events. The second conviction, for armed robbery, probably also constitutes a firearms offense even if the weapon used was a BB gun. Whether it was the first or second conviction that qualified as a firearms offense, the BIA has already decided that Umanzor was deportable for a firearms offense.

Appellant brings no redressable claim before the court on appeal. Therefore, he lacks standing before this court and his appeal is dismissed.

III.

Subsequent to filing his appeal, Umanzor also filed a motion to amend his petition for writ of habeas corpus and injunctive relief, in order to add an equal protection claim. We consider the motion to amend as a trial court would consider it, because the case was transferred from the district court pursuant to 28 U.S.C.§ 1631. Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may

5

amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Finding that appellant does not satisfy the requirements of Rule 15(a), we will deny the motion to amend and decline to consider the amended petition for writ of habeas corpus.

The Supreme Court has construed the phrase "when justice so requires" in Rule 15(a) to preclude granting leave to amend when any of the following are found to exist: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). At least two of these reasons to deny leave to amend exist here: undue delay and futility of the amendment.

First, Umanzor's motion is unduly delayed. Although the proposed amendments to the habeas petition respond directly to the June 4, 1998 BIA decision on the motion to reopen, the motion to amend was not filed until November 9, 1998. Umanzor's only explanation of this delay is that he "did not believe [the BIA's] opinion affected the claims sets forth in his initial habeas petition because the BIA decision did not address the merits of the firearms offense." Umanzor's motion further claims that, "[u]pon learning that the Government would seek to argue that the June 4, 1998 decision constituted a decision on the merits, [Umanzor] moved immediately to amend his petition." This explanation fails to cure the untimeliness of the motion to amend. The Government's brief, notifying Umanzor that it considered the June 4, 1998 decision to be dispositive of appellant's claims on appeal, was filed September 17, 1998. Even taking that later date, rather than the June 4, 1998 date, as the event triggering the motion to amend, the motion is unduly delayed. Furthermore, it challenges credulity to assert that the BIA's decision did not clearly address the merits of appellant's claims. As discussed above, the BIA's decision demonstrated its sound and firm opinion that Umanzor was ineligible for section 212(c) relief regardless of AEDPA. The BIA's decision spoke directly to the heart of Umanzor's claim. The appropriate time to respond to that decision had long since passed by the time the motion to amend was filed.

6

Timeliness is not the only defect in the motion to amend. Umanzor's motion also suffers from a problem of futility. Umanzor's equal protection claim, in essence, is that the immigration laws are unconstitutional because they afford aggravated felons who are not admitted for permanent residence an opportunity to apply for a waiver under section 212(h) while aggravated felons who have been admitted for permanent residence are not afforded that opportunity. The INS asserts that the different treatment between lawful permanent residents and nonresidents acknowledges that a lawful resident "enjoys greater rights than a nonimmigrant alien and assumes commensurate responsibilities and duties." We agree with the INS that this distinction between lawful residents and nonresidents is rational and does not violate equal protection. Similar equal protection claims have been brought by aliens in the past without success. See, e.g., Rodriguez, 9 F.3d at 414 (citing Fiallo v. Bell, 430 U.S. 787, 794-95 (1977), for the proposition that Congress need not treat all aliens alike if there is a legitimate reason for treating them differently; also quoting Cabasug, 847 F.2d at 1328: "The equal protection component of the due process clause does not require that all deportable aliens be treated alike, no matter what they have done"); cf. Raya-Ledesma v. INS, 55 F.3d 418, 420 (9th Cir. 1995) (finding rational basis for section 212(c) waiver eligibility requirement that alien be legally permanent resident for more than seven years because that indicates that alien has established a strong relationship with the United States).

We will therefore deny the motion to amend because Umanzor fails to meet the requirements of Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a), as construed by the Supreme Court, requires that leave to amend only be granted absent defects such as undue delay and futility, which are both present here.

IV.

For the foregoing reasons, the appeal is dismissed for lack of standing and the motion to amend is denied.

DISMISSED

7