Luis Alberto BEDOYA–VALENCIA,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 1158, Docket 92–4219.

United States Court of Appeals,
Second Circuit.

Argued Feb. 18, 1993.

Decided Sept. 24, 1993.

Mary T. Rogan, New York City (John Savastano, of counsel), for petitioner.

Ping C. Moy, Asst. U.S. Atty., S.D.N.Y., New York City (Roger S. Hayes, U.S. Atty.,

C. Millman, Asst. U.S. Atty., S.D.N.Y., of counsel), for respondent.

Before: OAKES, ALTIMARI, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner Luis Alberto Bedoya–Valencia petitions for review of an order of the Board of Immigration Appeals ("BIA") dated October 30, 1992 that dismissed his appeal from a deportation order issued June 18, 1992 by Immigration Judge Robert D. Weisel (the "IJ"). The IJ held, and the BIA agreed, that Bedoya–Valencia was ineligible for relief under § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (Supp. III 1991),[1] because a ground upon which his deportation is based, entry without inspection, is not also a ground for exclusion. In so ruling, the BIA followed the decision of the Attorney General, reversing a divided BIA, in In re Hernandez–Casillas, Interim Decision No. 3147, 1990 WL 385764 (BIA Jan. 11, 1990; Att'y Gen. Mar. 18, 1991), aff'd mem., 983 F.2d 231 (5th Cir.1993).

We vacate and remand, directing the BIA to exercise its discretion regarding Bedoya–Valencia's application for § 1182(c) relief.

Background

The facts in this case are uncontested. Bedoya–Valencia, a native and citizen of Colombia, first entered the United States as a lawful permanent resident in 1976. In 1983, he was convicted of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and sentenced to four years imprisonment and six years special parole. In February 1984, the Immigration and Naturalization Service ("INS") issued an order to show cause charging Bedoya–Valencia as deportable under section 241 of the INA, 8 U.S.C. § 1251(a)(11),[2] for having been convicted of a narcotics offense.

At his deportation hearing in September 1986, Bedoya–Valencia conceded deportability and applied for discretionary relief from deportation under § 1182(c).[3] See Francis v. INS, 532 F.2d 268, 272–73 (2d Cir.1976) (applying § 1182(c) to waiver of deportation as well as exclusion). The parties consented to an adjournment of the proceedings until the issue presented on this appeal was issued October 11, 1991. The revisions to §§ 1182 and 1251 effected by the 1990 and 1991 Acts do not substantially affect the provisions of those sections at issue on this appeal. In the interests of coherence, all references to those sections in this opinion will be to their current (1991) codifications unless otherwise indicated.

1. Section 1182(c) was most recently amended by Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. No. 102–232 (the "1991 Act"), § 307(c), 105 Stat. 1733, 1754. The amendment is effective "as if included in the enactment of the Immigration Act of 1990." 1991 Act § 310(1), 105 Stat. at 1759. The Immigration Act of 1990, Pub.L. No. 101–649 (the "1990 Act"), § 601, 104 Stat. 4978, 5067, extensively revised the provisions of § 1182 with respect to grounds for exclusion of aliens. The amendments made by § 601 are effective as to individuals entering the United States on or after June 1, 1991. 1990 Act § 601(e)(1), 104 Stat. at 5077.

Section 241 of the INA, 8 U.S.C. § 1251 (Supp. III 1991), is the other statutory provision principally at issue on this appeal. Section 1251 was most recently amended by § 307(h) of the 1991 Act, and this amendment is also effective "as if included in the enactment of the [1990 Act]." 1991 Act § 310(1), 105 Stat. at 1759. 1990 Act § 602, 104 Stat. at 5077, extensively revised the provisions of § 1251 with respect to grounds for deportation of aliens. The amendments made by § 602 "shall not apply to deportation proceedings for which notice had been provided to the alien before March 1, 1991." 1990 Act § 602(d), 104 Stat. at 5082.

As will appear, the initial notice in this case was provided to Bedoya–Valencia on February 24, 1974, but the supplemental notice that raises

2. This provision is currently codified at § 1251(a)(2)(B). See supra note 1.

3. Section 1182(c) provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this subsection (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

March 1987 to allow Bedoya–Valencia an opportunity to present evidence concerning his § 1182(c) application. In conjunction with this initial proceeding, Bedoya–Valencia's alien registration card was retained by the INS.

In November 1986, while his deportation proceedings were pending, Bedoya–Valencia departed the United States and went to Colombia. Assertedly because the INS still retained Bedoya–Valencia's documentation as to his resident alien status, he evaded inspection upon his return to the United States in early 1988, and illegally reentered the country. Upon learning of Bedoya–Valencia's illegal reentry, the INS lodged an additional charge of deportability against him on October 11, 1991 for unlawful entry without inspection in violation of § 1251(a)(1)(B). At his continued deportation hearing, Bedoya–Valencia conceded his deportability on the new charge and submitted a new application for § 1182(c) relief.

The IJ found that Bedoya–Valencia was statutorily ineligible for § 1182(c) relief. He based that determination upon the Attorney General's decision in *Hernandez–Casillas*, stating that "[t]he Attorney General unequivocally determined that entry without inspection, a conceded charge of deportability, is not waiveable by application for relief pursuant to [§ 1182(c) ]" because entry without inspection has no comparable ground of excludability under § 1182(a).

Bedoya–Valencia appealed the IJ's decision to the BIA. He did not challenge the IJ's findings of deportability, but argued that the IJ erred in finding him ineligible for § 1182(c) relief because: (1) the ground for deportation stated in § 1251(a)(1)(B), entry without inspection, is analogous to the ground for exclusion stated in § 1182(a)(7)(A), seeking admission without proper documentation; and (2) in any event, fundamental fairness requires that § 1182(c) relief should be available to aliens charged with any ground for deportation or exclusion other than those specifically excepted by statute.[4]

The BIA rejected Bedoya–Valencia's arguments. It viewed *Hernandez–Casillas* as having ruled that an alien deportable under § 1251(a)(1)(B) is ineligible for § 1182(c) relief because: (1) there is no ground of exclusion comparable to entry without inspection; (2) the limitation of § 1182 waiver relief imposed by *Hernandez–Casillas* is consistent with constitutional guarantees of equal protection; and (3) a contrary ruling would unduly disrupt the statutory scheme. The BIA accordingly affirmed the decision of the IJ and dismissed Bedoya–Valencia's appeal.

Bedoya–Valencia now seeks review of the BIA's decision before this court pursuant to 8 U.S.C. § 1105a (1988 & Supp. III 1991).

## Discussion

Bedoya–Valencia argues on appeal that: (1) the deportation ground of entry without inspection is analogous to the exclusion ground of seeking admission without proper documentation, and he is accordingly eligible for § 1182(c) relief; (2) if the statutory analogy is rejected, the case should be remanded for initial discretionary consideration of his claim for waiver of the narcotics ground of deportation, whose resolution might avoid any need to consider the constitutional issue otherwise presented by this appeal; and (3) in any event, due process and equal protection require that § 1182(c) relief be available for an alien deportable on any ground other than those specifically precluded by § 1182(c). *See supra* note 4.

These issues are solely questions of law, and thus our review is plenary. *See Campos v. INS*, 961 F.2d 309, 312 (1st Cir. 1992); *Ardestani v. INS*, 904 F.2d 1505, 1508 (11th Cir.1990), *aff'd*, —— U.S. ——, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *De los Santos v. INS*, 690 F.2d 56, 59 (2d Cir.1982). In conducting that review, however, deference must be accorded to the views of the Attorney General, who is charged with the administration of the INA and whose rulings with respect to questions of immigration law are controlling within the executive branch. *See*

---

4. The reference is to the exception stated in § 1182(a)(3) for the grounds of exclusion specified in § 1182(a)(3) (security and related grounds) and (9)(C) (international child abduction). *See supra* note 3.

8 U.S.C. § 1103(a) (1988); *Leal–Rodriguez v. INS,* 990 F.2d 939, 950 (7th Cir.1993); *De los Santos,* 690 F.2d at 59.

## A. *Entry Without Inspection as Analogous to a Ground for Exclusion.*

█ Bedoya–Valencia first contends that he is entitled to a § 1182(c) hearing because entry without inspection is analogous to a ground for exclusion, failure to present proper documents for admission. We disagree.

Section 1182(a)(7)(A)(i) provides:

Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—

(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title, or

(II) whose visa has been issued without compliance with the provisions of section 1153 of this title,

is excludable.

In contrast, section 1251(a)(1)(B) provides:

Any alien who entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or any other law of the United States is deportable.

The issue is to be determined by a standard of "substantial[ ] equivalen[ce]." *Campos,* 961 F.2d at 313 n. 6 (citing *In re Salmon,* 16 I. & N.Dec. 734 (1978)); *cf. Cabasug v. INS,* 847 F.2d 1321, 1324 (9th Cir.1988) ("crime involving moral turpitude" category "similar but not identical" under deportation and exclusion statutes). This standard is not satisfied by a comparison of these provisions. *See Hernandez–Casillas,* 1990 WL 385764 at *25 n. 4 (according to Attorney General, illegal entry is one of two grounds for deportation that have no analogue in the grounds for exclusion); *In re M—,* 5 I. & N.Dec. 642, 647 (BIA 1954) (entry without inspection is ground of deportation but not exclusion); *In re T—,* 5 I. & N.Dec. 389, 390 (BIA 1953) (same). Entry without inspection involves a calculated avoidance of the admission procedure; it is hardly equivalent to an invocation of that procedure that is undermined by faulty documents.

Bedoya–Valencia argues that he did not present himself for inspection when he returned to the United States because he lacked proper admission documents. That may be true, but it does not render the resulting illegal entry substantially equivalent, as a matter of statutory definition, to the motivating lack of documentation.

## B. *Remanding the Case for a § 1182(c) Hearing.*

█ Bedoya–Valencia next contends that this court should decline to address the merits of his claim at this time and remand the case for a determination of whether he would be granted § 1182(c) discretionary relief on his drug offense ground for deportation, thus avoiding the constitutional issue presented by this appeal in the event of an adverse discretionary ruling on remand by the BIA. He cites *Gutierrez v. INS,* 745 F.2d 548 (9th Cir.1984), in support of this procedure. In *Gutierrez,* as here, the alien was charged with both entry without inspection and a narcotics offense. Unlike the present case, however, the immigration judge in *Gutierrez* had ruled that the alien should not be accorded discretionary relief on the narcotics ground, in addition to ruling that discretion could not be exercised with respect to the entry without inspection. *See id.* at 549. On appeal, the BIA considered only the latter ruling. The Ninth Circuit remanded for the BIA to address the immigration judge's ruling on the narcotics issue, "an independent determination which, if it had been affirmed, would have disposed of the case." *Id.*

In this case, the IJ and the BIA properly refrained from exercising their § 1182(c) discretion regarding Bedoya–Valencia's narcotics conviction. They were obliged to follow the Attorney General's ruling in *Hernandez–Casillas. See Campos,* 961 F.2d at 314 ("The

Attorney General's ruling in [*Hernandez–Casillas* ] was administratively dispositive."). Because, pursuant to *Hernandez–Casillas,* no § 1182(c) discretion was available with respect to Bedoya–Valencia's entry without inspection, it would have been an exercise in futility for the IJ and the BIA to address the waiveability of the alternative ground of deportation. A remand for that purpose without addressing the underlying issue would be equally unproductive.

### C. *Eligibility for a Discretionary Waiver of Deportation under § 1182(c).*

In *Francis,* we invoked the implicit equal protection guarantee of the Fifth Amendment due process clause, *see Francis,* 532 F.2d at 272 n. 5 (citing *Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1165 n. 4, 39 L.Ed.2d 389 (1974); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)) to determine that it was "irrational to distinguish between two categories of narcotics offenders on the basis of a brief visit out of the country." *Guan Chow Tok v. INS,* 538 F.2d 36, 38–39 (2d Cir.1976) (construing *Francis* ). We therefore concluded that the discretionary waiver that § 1182(c) allowed in favor of a returning alien in exclusion proceedings must also be accorded his more sedentary counterpart in deportation proceedings. *See Francis,* 532 F.2d at 272–73. We did so even though Congress had "provid[ed] a separate but analogous scheme of discretionary relief to the non-departing alien." *Id.* at 273 (citing 8 U.S.C. § 1254(a)(2)); *cf. Correa v. Thornburgh,* 901 F.2d 1166, 1174 n. 10 (2d Cir.1990) ("there is no requirement that exclusion and deportation grounds be analogous") (citing *Cabasug,* 847 F.2d at 1326–27).

The BIA subsequently applied the *Francis* rule nationally in *In re Silva,* 16 I. & N.Dec. 26, 30 (BIA 1976).[5] That rule has now been adopted in the First, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits. *See De Gonzalez v. INS,* 996 F.2d 804, 806 (6th Cir.1993); *Leal–Rodriguez,* 990 F.2d at 949 (citing *Variamparambil v. INS,* 831 F.2d

1362, 1364 n. 1 (7th Cir.1987)); *Butros v. INS,* 990 F.2d 1142, 1143 (9th Cir,1993) (in banc) (citing, *inter alia, Tapia–Acuna v. INS,* 640 F.2d 223, 224 (9th Cir.1981)); *Casalena v. INS,* 984 F.2d 105, 106 n. 3 (4th Cir.1993) (citing, *inter alia, Chiravacharadhikul v. INS,* 645 F.2d 248, 248 ·n. 1 (4th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981)); *Ghassan v. INS,* 972 F.2d 631, 633 n. 2 (5th Cir.1992) (citing, *inter alia, Ashby v. INS,* 961 F.2d 555, 557 n. 2 (5th Cir.1992); *Mantell v. INS,* 798 F.2d 124, 125 (5th Cir.1986)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993); *Campos,* 961 F.2d at 313 (citing *Joseph v. INS,* 909 F.2d 605, 606 n. 1 (1st Cir.1990); *Lozada v. INS,* 857 F.2d 10, 11 n. 1 (1st Cir.1988)); *Vissian v. INS,* 548 F.2d 325, 328 n.· 3 (10th Cir.1977).

In *Francis,* however, the ground of deportation was a narcotics conviction, for which there was a substantially equivalent ground of exclusion. Thus, *Francis* did not address the situation presented by this appeal—a ground of deportation, entry without inspection, for which there is no analogous ground of exclusion.

The Attorney General determined in *Hernandez–Casillas* that the *Francis* rule should not be extended to allow § 1182(c) relief in such situations. His ruling was affirmed by the Fifth Circuit, without ·opinion. *See Hernandez–Casillas v. INS,* 983 F.2d 231 (5th Cir.1993) (mem.). Three other circuits concur. *See Leal–Rodriguez v. INS,* 990 F.2d 939, 950–52 (7th Cir.1993) (entry without inspection); *Campos v. INS,* 961 F.2d 309, 314–17 (1st Cir.1992) (firearms violation); *Cabasug v. INS,* 847 F.2d 1321, 1326–27 (9th Cir.1988) (firearms violation) (preceding *Hernandez–Casillas* ).

*Hernandez–Casillas* articulated the rationale that· has typified these decisions. The bases for the Attorney General's ruling were that: (1) under his interpretation, as under *Francis* and *Silva,* the statute "remains tied, albeit loosely, to the statutory text, because

---

5. Prior to *Francis* and *Silva,* a number of rulings by the Attorney General and the BIA, commencing in 1940, had allowed waivers under § 1182(c) and its predecessor in deportation proceedings .under varying circumstances. *See Francis,* 532 F.2d at 270–71 (summarizing this development).

it permits waivers of only those grounds for deportation that Congress· expressly made waiveable in the related context of exclusion," 1990 WL 385764 at *20–21, and the contrary approach "would take immigration practice even further from the statutory text, which refers only to grounds for exclusion"; and (2) "the guarantee of equal protection does not require[ ] ... further. departure from the terms of [§ 1182(c) ]." *Id.* at *21; *see also Leal–Rodriguez,* 990 F.2d at ·952; *Campos,* 961 F.2d at 316–17; *Cabasug,* 847 F.2d at 1326–27.

*Herandnez–Casillas* also expressed considerable unease about the underlying *Francis/Silva* rule, wholly aside· from the question of its application to grounds of deportation that do not have analogous grounds of exclusion. *See* 1990 WL 385764 at *20 (Attorney General "leave[s] for another day the question of whether [*Silva* ] should be disapproved"); *id.* at *21 (same); *id.* at *23 ("I do not here reach the question of the validity of *Francis* and *Silva.*"); *id.* at *28 n. 15 (same). The two pertinent circuit court opinions since *Hernandez–Casillas* state similar views. The First Circuit said in *Campos:*

> [W]hen to avoid perceived equal· protection problems the statute was stretched beyond its language to apply to deportation proceedings, problems crept in. If impatience with the legislative language had. not resulted in adding nonexistent provisions to the statute in the first place, Congress would likely have recognized the defects and long ago repaired any problems at the instance of the Attorney General, the INS and those concerned with the welfare of resident aliens. The question now becomes whether to engage in a second judicial rewriting of the statute in order to improve upon the first rewriting. This would be legislation pure and simple. As a starting point, there is not even the justification of linguistic ambiguity. Continued judicial redrafting simply insures that the statute will less and less be the recognizable product of the legislative will. We think a statute of this detailed nature is best left to the ministrations of the Congress. We decline to tinker further.

961 F.2d at ·316–17. The Seventh Circuit quoted this passage with approval in *Leal–Rodriguez,* 990 F.2d at 952.

We view the matter differently. *Francis* was decided over seventeen years ago, and addressed a situation that had been the subject of similarly ameliorative administrative decisions since 1940. *See supra* note 5. The Department of Justice declined to seek review of the *Francis* decision by the Supreme Court, and the BIA promptly adopted the *Francis* rule nationally. *See Silva,* 16 I. & N.Dec. at 29–30. As noted *supra,* seven circuits have since explicitly adopted the *Francis* rule, and no circuit has embraced a different rule. Further, since *Francis* was decided, Congress has not addressed either the issue to which *Francis* was addressed or the variant of the issue that is presented by this appeal.

The resulting situation· bears considerable similarity to one recently addressed by the Supreme Court. In *Musick, Peeler & Garrett v. Employers Insurance,* —— U.S. ——, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993), the Court answered affirmatively the question whether "defendants in a 10b–5 action have a right to seek contribution as a matter of federal law." *Id.* at ——, 113 S.Ct. at 2086. Although not deriving from a constitutional imperative, the authorization of a private right of action under Rule 10b–5, 17 C.F.R. § 240.10b–5 (1992), like the *Francis* rule, is a judicial creation. *See Musick,* —— U.S. at ——, 113 S.Ct. at 2088 (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 737, 95 S.Ct. 1917, 1922, 1926, 44 L.Ed.2d 539 (1975)). The Court thus recognized in *Musick* that "it would be futile to ask whether the 1934 Congress [that enacted the Securities Exchange Act of 1934, underlying Rule 10b–5] ... displayed a clear intent to create a contribution right collateral to the remedy" that Congress did not enact in the first place. *Id.,* —— U.S. at ——, 113 S.Ct. at 2088.

The Court therefore "attempt[ed] to infer how the 1934 Congress would have addressed the issue had the 10b–5 action been included as an express provision in the 1934 Act." *Id.* at —— – ——, 113 S.Ct. at 2089–90. As relevant here, the Court focused

upon "promot[ing] clarity, consistency and coherence for those who rely upon or are subject to 10b–5 liability, and ... effect[ing] Congress' objectives in enacting the securities laws." *Id.* at ——, 113 S.Ct. at 2090 (citations omitted).

The only clearly discernible Congressional intention regarding the denial of § 1182(c) waivers is that they are not available in exclusion proceedings to aliens who are excludible because of security and related grounds or because of international child abduction, or have served a term of imprisonment of at least five years upon conviction of one or more aggravated felonies. *See supra* notes 3 and 4. In *Hernandez–Casillas,* the BIA majority decided that § 1182(c) waivers should be available in deportation proceedings except as to grounds of deportation that are substantially equivalent to grounds of exclusion for which § 1182(c) relief is explicitly barred. *See* 1990 WL 385764 at *3. This approach would result in extending § 1182(c) eligibility to all grounds of deportation except those set forth in § 1251(a)(4) (security and related grounds).

In reversing the BIA and ruling that § 1182(c) waivers are available only for grounds of deportation for which there are substantially equivalent grounds of exclusion, the Attorney General stated that only two grounds of deportation fail to satisfy this requirement, entry without inspection, § 1251(a)(1)(B), and certain firearm offenses, § 1251(a)(2)(c). *See id.* at 25 n. 4. There is, however, at least one other nonequivalent ground of deportation—willful failure to notify the Attorney General of a change of address, §§ 1251(a)(3)(A), 1305 (1988). *See Cabasug,* 847 F.2d at 1323–24.

In thus limiting the § 1182 relief available in deportation proceedings, the Attorney General did not address the Congressional purposes underlying the enactment of the immigration laws. Rather, as noted *supra,* he articulated a determination not to depart further from the statutory text, and the absence of any constitutional (equal protection) mandate to do so. *See* 1990 WL 385764 at *24.

As a result of *Francis* and *Silva,* building upon a history of administrative decisions, there has already been a considerable departure from the text of § 1182(c), which now applies to deportation as well as exclusion proceedings despite the absence of any textual justification for this extension. Further, since Congress considered only grounds for exclusion when it enacted § 1182(c), it could not conceivably have had any intent regarding the availability of § 1182(c) discretion to a resident alien charged with illegal entry. Indeed, any such intention would be logically impossible. As the Seventh Circuit pointed out in *Leal–Rodriguez,* "entry without inspection [is] a ground for deportation which, as a matter of logic, cannot be a ground for exclusion, since the moment the violation occurs the offender is already inside the United States." 990 F.2d at 949. This analysis also applies to the deportation ground of wilful failure to notify the Attorney General of a change of address.

Absent any Congressional indication to the contrary, we believe that coherence and consistency are promoted by allowing the exercise of § 1182(c) discretion with respect to the deportation ground of entry without inspection. *Francis* effected a significant alteration of the legal framework in this area, and in the absence of any Congressional revisitation of that framework in the aftermath of *Francis,* courts must cope with the interstitial issue posed by grounds of deportation that have no counterparts among the statutory grounds for exclusion. At least with respect to entry without inspection, a ground of deportation that could not conceivably have such an analogue, there is no basis in statutory text or legislative purpose to preclude the modest extension of the *Francis* rule that Bedoya–Valencia seeks on this appeal.

We recognize, of course, as we did in *Francis, see* 532 F.2d at 273 & n. 8, the paramount authority of the executive and legislative branches of our national government with respect to immigration matters, and the correspondingly limited role of the judiciary. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977). We also recognize, however, that federal courts can play an important role in interstitial implementation of a legislative de-

sign, especially when that design has already been altered by a constitutionally based court decision. *Cf. Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson, J., concurring) ("While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.").

The ruling that we make today poses no challenge to the legislative and executive branches, or to the Attorney General's special role within the executive branch with respect to legal interpretation of the immigration statutes. *See* § 1103(a). We note that this opinion addresses the ramifications of a prior constitutional decision of this court, rather than the original statute concerning whose interpretation the Attorney General has conceded expertise. We note also that the Attorney General regards the legitimacy of this court's opinion in *Francis* as an open question, *see Hernandez–Casillas,* WL 385764 at *23 ("I do not here reach the question of the validity of *Francis* and *Silva.*"), despite its adoption by seven circuit courts in addition to the one that initially announced it. In sum, following the lead of the Supreme Court in *Musick,* we undertake only to achieve coherence regarding the impact of our prior ruling in *Francis* upon a ground of deportation that, by logical necessity, can have no counterpart ground of exclusion.

The INS points out that the prevention of illegal entry is an important policy of our immigration laws. All of the statutory grounds for deportation, however, are rooted in considerations of public policy. We are confident that the Attorney General and her delegates will accord those considerations appropriate weight in their exercise of § 1182(c) discretion. We hold only that Bedoya–Valencia is entitled to that exercise.

## Conclusion

The petition for review is granted. The case is remanded to the BIA for further proceedings not inconsistent with this opinion.