Fernando RODRIGUEZ–PADRON,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Osvaldo DAVILA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Dale Delmar DOWNS, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Lazaro JIMINEZ–MUNOZ, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Primitivo IZQUIERDO–DELGADO,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Andre SAUNDERS, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Caleme CHERFRERE, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Lazaro MATEO–RUIZ, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Luis LACASSE, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Jean Ronald ROSAN, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Remo Lamott MISSICK, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Raul DELGADO–NUNEZ, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Jennifer Dianica YOUNG, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Angel L. BATALLAN–VASQUEZ,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Nos. 92–2015, 92–2016, 92–4094, 92–4672, 92–4674, 92–4986 to 92–4988, 92–4994 to 92–4996, 92–5014, 92–5015 and 92–5105.

United States Court of Appeals,
Eleventh Circuit.

Jan. 21, 1994.

Patricia S. Wihnyk, Florida Institutional Legal Services, Inc., Gainesville, FL, for petitioners.

Donald Couvillon, Richard M. Evans, Carl H. McIntyre, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, DC, for respondents in Nos. 92–2015, 92–4672, 92–4986, 92–4987, 92–4988, 92–4994, 92–4995, 92–4996 and 92–5105.

Richard Smith, I.N.S., Kenneth Hurewitz, Gen. Atty., Miami, FL, Donald Couvillon, Richard M. Evans, Carl H. McIntyre, Appellant Counsel, Civ. Div., Immigration Litigation, Washington DC, for respondents in Nos. 92–2016 and 92–5014.

Richard M. Evans, Carl H. McIntyre, David J. Kline, Immigration Litigation, Civ. Div., Washington, DC, for respondent in No. 92–4094.

Richard M. Evans, Carl H. McIntyre, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent in No. 92–4674.

Donald A. Couvillon, Carl McIntyre, Office of Immigration Litigation, Civ. Div., Washington, DC, for respondent in No. 92–5015.

Before ANDERSON and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This case involves an issue of immigration law upon which there is a split of authority— *i.e.*, whether the Section 212(c) waiver is available in deportation proceedings when the deportation is based upon a ground which has no analogue in exclusion proceedings. This is the consolidated appeal of fourteen permanent resident aliens (hereinafter "Petitioners"), all of whom have been convicted of firearms offenses and thus were classified as deportable under Section 241(a)(14) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(14).[1] Petitioners conceded their deportability and sought discretionary waivers of deportation under Section 212(c)

---

1. The current version of this statute is as 8 U.S.C.A. § 1251(a)(2)(C) (West Supp.1993).

of the INA, 8 U.S.C. § 1182(c). The immigration judges ruled that Petitioners were ineligible for 212(c) waiver, and the Board of Immigration Appeals affirmed. This court has jurisdiction to review final orders of deportation pursuant to INA § 106(a), 8 U.S.C. § 1105a(a). We will affirm.

Section 212 of the INA provides several grounds for excluding aliens from the United States. 8 U.S.C. § 1182. Subsection (c) allows the Attorney General to use her discretion to admit permanent resident aliens who temporarily travel abroad and seek readmission, even if they may normally be excludable under the provisions of the statute.[2] On its face, Section 212(c) and its predecessor statute always have referred solely to exclusion, not deportation.[3]

Although the language of Section 212(c) refers only to exclusion (the process of excluding noncitizens who seek to enter the United States), for the last four decades it has been applied under certain circumstances to deportation (the process of expelling aliens who already are in the country). A brief review of the history of the application of Section 212(c) in the deportation context is in order. The Immigration and Naturalization Service ("INS") initially extended the availability of waiver for equitable reasons. A resident alien subject to exclusion upon reentry could seek a waiver if he was denied reentry; however, if border officials erroneously failed to challenge reentry and subsequently sought deportation on the same ground, the waiver would not be available under Section 212(c)'s plain language. This would put the alien who gained reentry and then was subject to deportation in a worse position than one denied reentry. To avoid this result, the INS allowed aliens who actually left the U.S. and then reentered to apply for a *nunc pro tunc* waiver if deportation was sought on a ground specified in Section 212. *See Leal–Rodriguez v. INS,* 990 F.2d 939, 949 (7th Cir.1993) (detailing the history of 212(c) waiver).

This extension led to further complications. A resident alien who became deportable and then voluntarily left the country suddenly became eligible for waiver upon reentry; another alien who was deportable for the same reason but never left the country had no recourse. *See id.* The Second Circuit found this result "not rationally related to any legitimate purpose of the statute" and struck it down in *Francis v. INS,* 532 F.2d 268, 272 (2d Cir.1976). The Board of Immigration Appeals and the circuit courts of appeal for the First, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits have followed the lead of the Second Circuit.[4] As a result, certain deportable aliens may seek discretionary waivers of exclusion under Section 212(c), but only if they are deportable on a ground specified for exclusion in Section 212. Courts for years declined to extend 212(c) waiver any further, holding that it was not available to aliens whose deportability was based on a ground for which a comparable ground of exclusion did not exist. *See In re Granados,* 16 I. & N.Dec. 726 (BIA 1979). In 1990, the Board of Immigration Appeals reversed its ground in a case involving deportation based on entry without inspection and held that Section 212(c) relief is available to all aliens facing deportation (unless the ground was one specifically excluded in 212(c)). *In re Hernandez–Casillas,* Int.Dec. 3147 (BIA Jan. 11, 1990). This extension of 212(c) waiver was short-lived; the Attorney General reversed the Board of Immigration Appeals, and the reversal was affirmed by the Fifth Circuit. *In re Hernandez–Casillas,* Int.Dec. 3147 (Att'y Gen. Mar. 18, 1991), *aff'd mem.,* 983 F.2d 231 (5th Cir.1993).[5] Three

---

**2.** Aliens convicted of certain categories of excludable offenses, not applicable in the present case, are not eligible for Section 212(c) waiver.

**3.** The current version of the statute reads, in pertinent part:

> Aliens lawfully admitted for permanent resident [*sic*] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attor-

ney General without regard to the provisions of subsection (a) of this section....
8 U.S.C.A. § 1182(c) (West Supp.1993).

**4.** *See Bedoya–Valencia v. INS,* 6 F.3d 891, 895 (2d Cir.1993) (citing cases).

**5.** After preparation of this opinion, the Fifth Circuit explicitly addressed the availability of Section 212(c) waiver for an alien convicted of a firearm offense and reached the conclusion that the waiver is not available. *Rodriguez v. INS,* 9 F.3d 408 (1993).

other circuits have agreed that 212(c) waiver is not available in deportations on grounds for which there are no analogous grounds of exclusion. *Leal–Rodriguez v. INS*, 990 F.2d 939 (7th Cir.1993) (entry without inspection); *Campos v. INS*, 961 F.2d 309 (1st Cir.1992) (firearms violation); *Cabasug v. INS*, 847 F.2d 1321 (9th Cir.1988) (firearms violation). However, a few days before oral argument was heard in the present case, the Second Circuit held that 212(c) waiver is available in deportations based on unlawful entry without inspection, a ground for which there is no analogous basis for exclusion. *Bedoya–Valencia v. INS*, 6 F.3d 891 (2d Cir.1993).

Petitioners are subject to deportation based on their convictions for firearms violations. There is no analogous ground for exclusion. However, they contend that they should be able to seek discretionary waiver for two reasons: (1) denying them the opportunity to pursue waiver violates their right to equal protection of the laws; and (2) Congress has implicitly acquiesced to the expansion of 212(c) waiver. In addition, at oral argument counsel for Petitioners urged us to adopt the reasoning of the Second Circuit in *Bedoya–Valencia v. INS*. We consider these arguments in turn. The Attorney General's interpretation of 212(c) waiver in *Hernandez–Casillas* will be disregarded only if it misconstrues the law or the Constitution. *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (courts defer to reasonable interpretations of administrative agencies). *See also Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (Congress has plenary power over immigration matters); *Perlera–Escobar v. Executive Office for Immigration*, 894 F.2d 1292, 1296 (11th Cir.1990) (giving

deference to the BIA's interpretation of the INA).

## EQUAL PROTECTION

■ In the only equal protection argument that has been fairly presented to this court, Petitioners contend that it is irrational to deny them the opportunity to seek 212(c) waiver when those convicted of more serious crimes may apply for discretionary waiver.[6] Petitioners allege that this "creates a classification of aliens based solely on their crimes [that] does not permit for consideration of the severity of the crimes or equities of the aliens as a means of affording relief. There is no rational basis for deporting all aliens convicted of firearms offenses."[7] Pet'r Br. at 5. In response, the INS argues that Congress has shown a strong desire to curtail firearms violations among aliens, and this desire is a legitimate reason for denying 212(c) waiver.

Petitioners rely heavily on *Marti–Xiques v. INS*, 713 F.2d 1511 (11th Cir.1983), *vacated*, 724 F.2d 1463 (11th Cir.), *decided on other grounds*, 741 F.2d 350 (11th Cir.1984), in support of their equal protection argument. The original *Marti–Xiques* panel held that when an alien is deportable under two grounds arising from the same incident—one with an analogous ground of exclusion and the other without—212(c) waiver is available on the non-analogous ground if it is the less serious of the two deportable offenses. 713 F.2d at 1516. However, even the vacated panel opinion in *Marti–Xiques* expressly declined to extend the benefit of Section 212(c) merely by pointing to the fact that a more serious ground of exclusion is enumerated in Section 212(c). 713 F.2d at 1516.

---

6. For example, one petitioner, Dale Delmar Downs, was convicted of second-degree murder (a crime involving moral turpitude), for which 212(c) waiver is available. *See* 8 U.S.C.A. § 1182(a)(2)(A)(i)(I) (West Supp.1993). However, no waiver is available for Downs' firearms conviction. Under the current statute, [a]ny alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying in violation of any law, any weapon, part, or accessory which is a firearm or destructive device . . . is deportable. *Id.* § 1251(a)(2)(C).

7. Petitioners claim denying them the opportunity to seek 212(c) waiver violates their right to equal protection as guaranteed by the Fourteenth Amendment. Of course, because federal action is at issue, the Fourteenth Amendment is not applicable; we assume Petitioners are seeking relief under the equal protection component of the Fifth Amendment's due process clause, which provides protection coterminous with that of the Fourteenth Amendment's equal protection clause. *See Johnson v. Robison*, 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974).

■ Congress generally may treat different crimes differently without running afoul of the guarantee of equal protection. The Constitution does not require the legislature "to lay out crimes on a spectrum, and grant at least as much discretion for the less serious as for any more serious crimes." *Cabasug v. INS*, 847 F.2d at 1327. The Petitioners' constitutional argument has been accepted by no court, and has been rejected by several circuit courts of appeal and the Attorney General. We agree with the First, Seventh, and Ninth Circuits, as well as the Attorney General (as affirmed by the Fifth Circuit), that the denial of availability of 212(c) waiver to Petitioners has a rational basis and consequently does not violate their right to equal protection of the law.

## CONGRESSIONAL ACQUIESCENCE

■ Petitioners contend that Congress implicitly approved the BIA's expansion of Section 212(c) waiver availability in *Hernandez–Casillas* by extensively amending the Immigration and Nationality Act in 1990 without disapproving the BIA's holding. The BIA's decision was made on January 11, 1990. The Immigration Act of 1990 was signed into law on November 29, 1990. The Attorney General reversed the BIA's *Hernandez–Casillas* decision on March 18, 1991. Citing this chronology, Petitioners argue that the amendment of the Immigration and Nationality Act was an implicit approval of the BIA's expansive reading of 212(c) waiver. Petitioners contend that Congress implicitly approved of a BIA decision that stood for only fourteen months, was contrary to previous administrative interpretation, and indeed was unsettled during passage of the 1990 amendments because the INS sought review of *Hernandez–Casillas* by the Attorney General several months before the amendments became final. *See Campos v. INS*, 961 F.2d at 315 n. 8. Contentions similar to that of Petitioners have been uniformly rebuffed. Whatever force congressional acquiescence arguments may retain, *see Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n. 1, 109 S.Ct. 2363, 2371 n. 1, 105 L.Ed.2d 132 (1989), the argument clearly is not persuasive where the administrative interpretation to which Congress allegedly acquiesced is as tenuous as in the instant case. *See Campos v. INS*, 961

F.2d at 315 n. 8. We reject the contention that Congress approved of the 212(c) waiver availability extension made by the BIA in its short-lived *Hernandez–Casillas* decision.

## CONGRESSIONAL INTENT

Finally, Petitioners urge this court to adopt the reasoning and holding of the Second Circuit in *Bedoya–Valencia v. INS*, 6 F.3d 891 (2d Cir.1993), decided just a few days before oral argument was heard in this case. The *Bedoya–Valencia* court held that 212(c) waiver is available for aliens who are subject to deportation because of their unlawful entry into the country, despite the lack of an analogous ground for exclusion. The Second Circuit found this expansion consistent with congressional intent in light of the considerable judicial gloss overlaying the plain language of Section 212(c).

*Bedoya–Valencia's* consideration of the issue included, *inter alia*, the following observations: that the expansion of 212(c) availability to analogous grounds of deportation on equal protection grounds, initially made in *Francis v. INS*, 532 F.2d 268 (2d Cir.1976), has been adopted by the BIA and seven circuits; and that Congress subsequently has not addressed the issue. The Second Circuit concluded that this has left a rule that was judicially created; and that, as a result, a court asked to define the boundaries of the rule is unable to look to plain statutory language. *Bedoya–Valencia*, 6 F.3d at 896. The Second Circuit analogized the situation to a recent Supreme Court case dealing with the private right of action under Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5, *Musick, Peeler & Garrett v. Employers Insurance*, —— U.S. ——, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993). In *Musick*, the Supreme Court faced the question of whether defendants in a 10b–5 action have a right to seek contribution as a matter of federal law. *Id.*, at ——, 113 S.Ct. at 2086. Because the private right of action under Section 10(b) and Rule 10b–5 was implied by courts rather than explicitly provided by Congress, *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975), the *Musick*

Court observed that it would be futile to inquire into the intent of the Congress that adopted Section 10(b). *Id.,* —— U.S. at ——, 113 S.Ct. at 2088. Instead, the Court attempted to determine how the 1934 Congress would have addressed the issue of contribution had a private right of action been explicitly included, focusing on the promotion of clarity, consistency, and coherence, along with effecting the objectives of Congress. *Id.,* at —— —— ——, 113 S.Ct. at 2089–90. The Second Circuit found this approach appropriate in the 212(c) context, equating the implication of a private right of action under the securities laws with the extension of waiver availability stemming from *Francis.* The court determined that the only clear congressional intent regarding the denial of 212(c) waivers is that they are not available to aliens subject to exclusion on certain specified grounds.[8] Therefore, allowing all aliens subject to deportation—except those deportable on the grounds specified as nonwaivable in the exclusion context—to seek discretionary waivers would not be inconsistent with express congressional intent and would promote coherence and consistency. *Bedoya–Valencia,* 6 F.3d at 897. The Second Circuit (unlike the Attorney General in *Hernandez–Casillas* and at least two other circuits) was untroubled by the lack of a basis for this extension in the statutory text, observing that "there has already been a considerable departure from the text" in extending waiver availability to those deportable on analogous grounds. *Id.*

We decline to adopt the reasoning of the Second Circuit. Initially, we note that the private right of action under Section 10(b) and Rule 10b–5 was implied by courts to give effect to a statute, whereas *Francis* expanded waiver availability to avoid a violation of a constitutional right. The former draws an implication from existing text, while the latter is a clear departure from plain statutory language. In this context, we believe that a statute should be stretched only as far as necessary to prevent unconstitutionality.[9]

Moreover, *Bedoya–Valencia* is distinguishable from this case. *Bedoya–Valencia* was deportable because of his illegal entry into the United States. The Second Circuit noted that illegal entry could not logically be a ground of exclusion because the offender is already inside the country when the violation occurs. *Bedoya–Valencia,* 6 F.3d at 897 (citing *Leal–Rodriguez v. INS,* 990 F.2d at 949). Therefore, the court observed, Congress could not conceivably have had any intent regarding an alien deportable due to illegal entry. By contrast, firearms violations could be specified as grounds for exclusion if Congress so chose. Although Congress has not done so, it has been aware that 212(c) waiver long has been unavailable to firearms offenders who face deportation; in addition, it has expanded the types of firearms violations that may serve as grounds for deportation. *See Campos v. INS,* 961 F.2d at 314. Since the Second Circuit's *Bedoya–Valencia* case involved the arguably distinguishable illegal entry ground, no case has held that the Section 212(c) waiver is applicable to a deportation on the ground of a firearms violation.

■ Thus, we reject Petitioners' argument based upon a purported congressional intent and *Bedoya–Valencia.* We see no indication of a congressional intent to extend the availability of the Section 212(c) waiver to deportation on the ground of a firearms violation. Perceiving no constitutional violation, we decline to depart from the statutory language of Section 212(c) in order to encompass this case. Finally, and significantly, we note that the Attorney General's reasonable interpretation of the statutory scheme is entitled to deference. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In *Hernandez–Casillas,* the Attorney General has held that the Section 212(c) waiver is available in the deportation context only to the extent that the grounds of deportation are analogous to one of the grounds for exclusion. With respect to the firearms ground at issue in this case, we

---

8. Section 212(c) specifies that waivers are not available to aliens excluded due to security and related concerns, or those involved in international child abduction. 8 U.S.C.A. § 1182(c) (West Supp.1993).

9. *Bedoya–Valencia* was not based on a violation of equal protection or any other constitutional guarantee.

readily conclude that the Attorney General's interpretation is reasonable and does not misconstrue the statute. Thus, consistent with the First, Fifth, Seventh, and Ninth Circuits, we hold that the Section 212(c) waiver is not available in a deportation on the ground of firearm violation.

### CONCLUSION

· For the foregoing reasons, we agree with the Board of Immigration Appeals' holding that Petitioners are ineligible to pursue discretionary waiver of deportation pursuant to INA § 212(c), 8 U.S.C. § 1182(c).

AFFIRMED.