21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Sami Ayoub MATTY, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-3172.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1994.
 
 Before: MERRITT, Chief Judge; GUY and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Sami Ayoub Matty, an Iraqi national living in the United States since 1976, appeals from a final deportation order by the Board of Immigration Appeals (BIA). He claims that he should have been deemed eligible, under Section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. Sec. 1182(c), for relief from deportation ("Section 212 relief"). In the alternative, claiming that he will face religious persecution as a Chaldean Catholic if he is sent back to Iraq, Matty seeks asylum under INA Sec. 208, 8 U.S.C. Sec. 1158, or non-refoulement ("withholding of deportation") under INA Sec. 243(h), 8 U.S.C. Sec. 1253(h). For the reasons set forth below, we affirm the BIA's deportation order and its rejection of Matty's other requests.
 
 
 2
 * Matty immigrated to the United States in 1976. His wife, Maysoon, is an American citizen, and they have four children under nine years of age. The children, having been born in the United States, are also American citizens. On July 30, 1990, he was convicted in Michigan state court of carrying a concealed weapon, receiving stolen property, and possession of cocaine and marijuana. He was also found guilty of being an habitual offender. Two weeks later, on August 13, he was convicted of breaking and entering an occupied dwelling with intent to commit larceny, possession of cocaine, possession of a concealed weapon, and possession of a firearm in the commission of a felony. He was also found guilty of being an habitual offender.
 
 
 3
 As a result of Matty's convictions, the Immigration and Naturalization Service began deportation proceedings.[1] After a hearing, the immigration judge (IJ) held that Matty was statutorily ineligible for Section 212 relief. Furthermore, based partly on Matty's testimony at the deportation hearing and partly on an advisory opinion from the State Department and background documentation on Iraq, the IJ found that Matty's fear that he would be persecuted in Iraq on the basis of his religion was not well-founded. Therefore, he could be deported under various provisions of the INA, including INA Sec. 241(a)(2)(C), 8 U.S.C. Sec. 1251(a)(2)(C) (alien convicted of firearms violation), INA Sec. 241(a)(2)(B)(i), 8 U.S.C. Sec. 1251(a)(2)(B)(i) (alien convicted of a controlled substance violation), and INA Sec. 241(a)(2)(A)(ii), 8 U.S.C. Sec. 1251(a)(2)(A)(ii) (alien convicted of two or more crimes involving moral turpitude). Matty appealed from the IJ's decision, and the BIA dismissed his appeal, thus constituting a final deportation order. This appeal followed.
 
 II
 
 4
 As an initial matter, we distinguish between the laws that define "deportable aliens," INA Sec. 241, 8 U.S.C. Sec. 1251, and those defining "excludable aliens," INA Sec. 212, 8 U.S.C. Sec. 1182. "Exclusion" refers to preventing individuals who are outside our borders from entering into the United States. "Deportation" refers to removing individuals who are within our borders from the United States. Although these laws govern different legal situations, they have become somewhat intertwined under the caselaw that governs remedies available to those seeking relief from deportation.
 
 
 5
 Under Section 212 of the Immigration and Nationality Act, as noted above, certain classes of aliens may be excluded from entering the United States. However, INA Sec. 212(c) provides a "waiver of exclusion" for certain aliens who, after having been admitted as lawful permanent residents (LPRs), temporarily proceed abroad and then find themselves potentially subject to the exclusion laws when they attempt to return. The Attorney General is authorized in her discretion to grant a waiver of exclusion ("Section 212 relief") to LPRs who encounter legal obstacles that would bar their readmission into the United States, if they can show that they have maintained a lawful unrelinquished domicile here for at least seven consecutive years.
 
 
 6
 The Immigration and Naturalization Service (INS), following the decision in Francis v. INS, 532 F.2d 268 (2d Cir.1976), has extended the application of Section 212(c) relief to certain LPRs facing deportation from the United States.[2] Matter of Silva, 16 I. & N. Dec. 26, 30 (B.I.A.1976); see also De Gonzalez v. INS, 996 F.2d 804, 806 (6th Cir.1993); Tapia-Acuna v. INS, 640 F.2d 223, 225 (9th Cir.1981). However, in broadening the "waiver of exclusion " to provide relief from deportation, the INS has limited that expanded application exclusively to situations in which an individual is facing deportation for the kind of reason that, if he were outside the country, could have been used to exclude him from entering, but that could have been waived ("a ground of deportation for which there is a corresponding ground of exclusion that can be waived"). Thus, the Attorney General has declined to expand Section 212 relief to cover grounds of deportation that do not have a corresponding ground of exclusion that can be waived.[3] Matter of Montenegro, Interim Decision No. 3192, 1992 WL 364787 (B.I.A. Nov. 18, 1992) (holding that Section 212 relief is ineffective to waive deportability for an alien convicted of a firearms violation under INA Sec. 241(a)(2)(C), 8 U.S.C. Sec. 1251(a)(2)(C)); Matter of Hernandez-Casillas, Interim Decision No. 3147, 1990 WL 385764 (B.I.A. Jan. 11, 1990; Att'y Gen. Mar. 18, 1991) ("Under no plausible understanding of equal protection principles must discretionary relief be made available in deportation cases where the ground for deportation could not be waived if asserted in an exclusion case."), aff'd mem., 983 F.2d 231 (5th Cir.1993).
 
 
 7
 The Attorney General's position has received widespread deference from the courts. See, e.g., Campos v. INS, 961 F.2d 309, 315-17 (1st Cir.1992) (assessing the statutory development of Section 212(c) as an "untidy patchwork, even, one might say, a mess" and therefore deciding that "a statute of this detailed nature is best left to the ministrations of the Congress. We decline to tinker further."); see also Leal-Rodriguez v. INS, 990 F.2d 939, 950-52 (7th Cir.1993). But see Bedoya-Valencia v. INS, 6 F.3d 891, 896-97 (2d Cir.1993).[4]
 
 
 8
 The immigration laws provide a number of reasons for excluding aliens from the United States. For example, an alien who is trying to enter the country can be excluded for a prior violation of a law or regulation overseas relating to controlled substances like marijuana and cocaine, INA Sec. 212(a)(2)(A)(i)(II); for a crime involving moral turpitude, id. Sec. 212(a)(2)(A)(i)(I); for being known to be involved with drug trafficking, even though never charged or convicted, id. Sec. 212(a)(2)(C); and for various other reasons. However, the laws do not provide exclusion for the unlawful ownership, possession, or carrying of a firearm. Therefore, INA Sec. 212 relief cannot be invoked as a remedy when a deportation has been ordered under INA Sec. 241(a)(2)(C). Matter of Montenegro, supra. In this case, among the various crimes for which Matty was convicted in 1990, there were a number of firearm offenses: carrying a concealed weapon, possession of a concealed weapon, and possession of a firearm in the commission of a felony. Under INA Sec. 241(a)(2)(C), Matty is deportable.
 
 III
 
 9
 Realizing that he might not be deemed eligible for a waiver of his deportation, Matty seeks alternative forms of relief from deportation. First, he seeks asylum in the United States, claiming that he will be persecuted in Iraq because he is a Chaldean Catholic. An applicant for asylum may qualify for that status if he meets his burden to prove that he is a "refugee":
 
 
 10
 The term "refugee" means (A) any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....
 
 
 11
 INA Sec. 101(a)(42), 8 U.S.C. Sec. 1101(a)(42) (emphasis added). "Generally harsh conditions shared by many other persons [do] not amount to persecution.... '[P]ersecution' ... clearly contemplates that harm or suffering must be inflicted upon an individual in order to punish him for possessing a belief or characteristic a persecutor seeks to overcome." Matter of Acosta, 19 I. & N. Dec. 211, 1985 WL 56042 (B.I.A. Mar. 1, 1985). An applicant can prove a well-founded fear of persecution if:
 
 
 12
 [h]e establishes that there is a pattern or practice in his country of nationality ... of persecution of groups of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and [h]e establishes his own inclusion in and identification with such group of persons such that his fear of persecution upon return is reasonable.
 
 
 13
 8 C.F.R. Sec. 208.13(b)(2)(i). The "alien need not prove that it is more likely than not that he or she will be persecuted in his or her home country." INS v. Cardoza-Fonseca, 480 U.S. 421, 431, 450 (1987). However, "[a]n application for asylum shall be denied if the applicant establishes past persecution [but does not also establish] a well-founded fear of future persecution ... unless it is determined that the applicant has demonstrated compelling reasons for being unwilling to return to his country of nationality ... arising out of the severity of the past persecution." 8 C.F.R. Sec. 208.13(b)(1)(ii) (emphasis added). "Authentic refugees rarely are able to offer direct corroboration of specific threats or specific incidents of persecution." Turcios v. INS, 821 F.2d 1396, 1402 (9th Cir.1987). Therefore, an applicant's own testimony can be sufficient to meet his burden of proof as long as the testimony is unrefuted and credible, ibid., as well as persuasive and detailed, referring to specific corroborative facts. Khalaf v. INS, 909 F.2d 589, 591-92 (1st Cir.1990) (regarding as "insufficient to establish a well-founded fear of persecution" an applicant's general assertion that he would be persecuted if deported to Jordan because he had a Jewish father-in-law and a Christian mother-in-law).
 
 
 14
 In this case, the IJ found that Matty's expressed fear of religious persecution in Iraq was not well-founded. In his application for asylum, Matty had written:
 
 
 15
 We have always been members of the Chaldean church. The Iraqi government has never allowed us to practice our religion freely. I have also lived in the United States for 16 years. The Iraqi government would mistreat me, my wife and children if we were to return to Iraq.
 
 
 16
 The Iraqi government hates and mistreats people with close ties to the United States. It also treats poorly Chaldeans [sic]. I would be singled out for my religion and ties to America for harassment or jail.
 
 
 17
 ....
 
 
 18
 Conditions in Iraq are unfit for all Iraqi citizens. A person like myself who is both Chaldean and who has close ties to the United States will be viewed as an enemy of the State[ ].
 
 
 19
 JA at 59, 62.
 
 
 20
 Based on Matty's claim of well-founded fear of persecution based on religion, the IJ sought information from the United States Department of State. In an advisory letter dated July 20, 1992, the Acting Director of the Office of Asylum Affairs in the State Department's Bureau of Human Rights and Humanitarian Affairs wrote the IJ:
 
 
 21
 Iraq's population is about 4 percent Christian and, contrary to what the applicant says, Christians are not persecuted in Iraq because they are Christians. New church construction is permitted. Chaldeans occupy responsible positions across the socio-economic spectrum in Iraq. The deputy prime minister, Tariq Aziz, is a Chaldean. The Iraqi government is relentlessly secular (and relentlessly authoritarian) but basically does not care how its citizens worship or whether they worship at all.
 
 
 22
 JA at 64. When the IJ asked Matty at his hearing to elaborate on the persecution that he feared, he said:
 
 
 23
 [I]t's [an] Islamic country over there and they used to give us [a] hard time and get [indiscernible] name and all this kind of stuff in Iran and Iraq. When we[,] [e]special[ly] when we go[,] when we used to go to school and go to[,] to church, they used to give us [a] hard time, tell us [indiscernible], the Islamic people over there.... Sometime they tell us[,] tell us names, used to be scared from[,] from them most of the time.... [a]nd they used to sometime throw rocks on us when we used to go to church or do things like that.
 
 
 24
 JA at 20. However, under cross-examination, Matty conceded that, during his years in Iraq prior to coming to America at age 16, he had never been detained by the police or interrogated. In fact, the only place that he had ever been arrested was in the United States.
 
 
 25
 While Iraq may be a hard place to live, we agree with the BIA that Matty's testimony did not meet his burden to prove in a credible, fact-specific, and unrefuted manner that his fear of future religious persecution is well-founded. His credibility was severely compromised by his criminal record, but that concern alone would not disqualify his testimony. However, his testimony was very general, speaking in terms of being "scared" of Moslems, being called "names," being exposed to a "hard time," and having rocks thrown at Chaldeans. While this last point might have had greater significance if it were shown to be part of a sustained effort to physically batter Iraq's Chaldean Catholics, Matty offered that testimony more as an afterthought, after unpersuasively repeating recollections of being called "names" and being subjected to a "hard time." He offered the IJ no names, dates, incidents, or any of the details that might have helped him to carry his burden of proof. By contrast, the State Department advisory opinion, reports, and documentation refuted Matty's claims.[5]
 
 
 26
 Even if Matty had met his burden of proof, "[a]n application for asylum shall be denied if ... [t]he alien, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community...." 8 C.F.R. Sec. 208.14(c)(1) (emphasis added). The IJ found that Matty's crimes, including breaking and entering an occupied dwelling with the intent to commit larcency, while carrying a concealed handgun, were particularly serious and constituted a danger to the community of the United States. The BIA panel agreed that the crimes "involve[d] the potential for great bodily harm to the occupants of the dwelling." See also Matter of Carballe, 19 I. & N.Dec. 357, 1986 WL 67712 (B.I.A. Feb. 13, 1986) ("Robbery is a grave, serious, aggravated, infamous, and heinous crime.").
 
 
 27
 In this case, Matty was convicted of a felony, breaking and entering an occupied dwelling with intent to commit larceny. He was armed. His confederate was charged with intending to murder the occupant. This is the kind of "particularly serious crime" that would invalidate any possible eligibility for asylum.
 
 
 28
 Once a court has determined that an alien has been convicted of a particularly serious crime, it need not make a separate finding that the alien constitutes a danger to the community; the latter follows naturally from the former.
 
 
 29
 Urbina-Mauricio v. INS, 989 F.2d 1085, 1087 (9th Cir.1993); Carballe, supra (holding that "those aliens who have been finally convicted of particularly serious crimes are presumptively dangers to this country's community").
 
 IV
 
 30
 Realizing that he might be denied asylum, Matty seeks another alternative remedy, the withholding of his deportation to Iraq ("non-refoulement"):
 
 
 31
 The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
 
 
 32
 INA Sec. 243(h)(1), 8 U.S.C. Sec. 1253(h)(1) (emphasis added).
 
 
 33
 However, as with the case of asylum discussed above, the relief is unavailable to an "alien [who], having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." INA Sec. 243(h)(2)(B), 8 U.S.C. Sec. 1253(h)(2)(B); 8 C.F.R. Sec. 208.16(c)(2)(ii). Therefore, Matty would be ineligible for the withholding of his deportation even if it were likely that his life would be threatened by the deportation to Iraq.
 
 V
 
 34
 For the foregoing reasons, the judgment of the Board of Immigration Affairs, constituting a final deportation order against the petitioner, is AFFIRMED.
 
 
 
 [1]
 Any alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying in violation of any law, any weapon, part, or accessory which is a firearm ... is deportable
 INA Sec. 241(a)(2)(C), 8 U.S.C. Sec. 1251(a)(2)(C) (emphasis added).
 
 
 [2]
 The reasoning is based on due process concerns of equal protection. If an LPR commits an excludable act while domiciled in the United States, then travels abroad briefly, he will encounter legal obstacles to re-entry, but he may obtain a waiver of exclusion under INA Sec. 212(c). The Francis court was bothered by the anomaly that the same LPR who commits the same excludable act could face deportation and be denied the possibility of Section 212 relief if his "ties with this country are so strong that [unlike the protected offender who travels abroad] he has never departed after his initial entry[. Such a person] should receive at least as much consideration as an individual who may leave and return from time to time." 532 F.2d at 273
 
 
 [3]
 Based on the equal protection rationale for expanding Section 212 relief beyond exclusion cases, to deportation cases, there is no equal protection concern when dealing with a deportation case that is based on grounds that do not correspond to any waivable exclusion ground
 
 
 [4]
 In Bedoya-Valencia, the petitioner faced deportation on the ground of unlawful entry without inspection. INA Sec. 241(a)(1)(B), 8 U.S.C. Sec. 1251(a)(1)(B). The Second Circuit extended its seventeen-year-old Francis rule to allow the petitioner to seek a waiver from deportation even though the ground for his deportation did not have a corresponding ground of exclusion that could be waived. 6 F.3d at 896-97. However, the Bedoya-Valencia court has subsequently been criticized. See, e.g., Rodriguez-Padron v. INS, 13 F.3d 1455, 1459-60 (11th Cir.1994)
 Here, Matty faces deportation because of his firearms violations, thereby distinguishing this case from Bedoya-Valencia, where the petitioner faced deportation because of entry without inspection. See Rodriquez-Padron, 13 F.3d at 1460. Therefore, we leave the issues raised by the Bedoya-Valencia court for another day.
 
 
 [5]
 It may be noted that State Department advisory opinions are themselves informed by many political considerations and therefore should be evaluated with circumspection in immigration matters on a case-by-case, country-by-country, basis. See, e.g., Kasravi v. INS, 400 F.2d 675, 677 n. 1 (9th Cir.1968):
 Such letters from the State Department do not carry the guarantees of reliability which the law demands of admissible evidence. A frank, but official, discussion of the political shortcomings of a friendly nation is not always compatible with the high duty to maintain advantageous diplomatic relations with nations throughout the world. The traditional foundation required of expert testimony is lacking; nor can official position be said to supply an acceptable substitute. No hearing officer or court has the means to know the diplomatic necessities of the moment, in the light of which the statements must be weighed.